[No. 12940.   In Bank. — June 9, 1890.]

## SARAH MITCHELL, RESPONDENT, *v.* WILLIAM CLINE ET AL., APPELLANTS.

CONTRACT AGAINST PUBLIC POLICY — MINING CLAIMS — AGREEMENT TO
    SHARE SHAM LOCATIONS. — A contract between several persons, that they
    shall locate for their joint benefit an amount of placer-mining ground
    exceeding the legal limit of twenty acres allowed for each of them by
    section 2331 of the United States Revised Statutes, and that, in making
    the location, they shall pretend to satisfy the law, by using the names
    of such additional locators as will voluntarily and without consideration
    convey their interests to the contracting parties jointly, contemplates a
    fraud upon the government, and is against public policy and void.
ID. — CONSTRUCTIVE TRUST — CONVEYANCE IN VIOLATION OF CONTRACT. — A
    constructive trust cannot be enforced in favor of any of said contracting
    parties against one of their number who has procured a conveyance of
    part of such sham locations to himself individually, without considera-
    tion, in violation of the contract that the conveyance should be made to
    all of them jointly.
ID. — CONTRACT TO SHARE RESULTS OF FRAUD — RELIEF IN EQUITY —
    PARTIES IN PARI DELICTO. — Where two or more have entered into a
    fraudulent scheme for the purpose of obtaining property, in which all
    are to share, and the scheme has been carried out so that all the results
    of the fraud are in the hands of one of the parties, a court of equity will
    not interfere in behalf of the others, to aid them in obtaining their shares,
    but will leave the parties in the position where they have placed them-
    selves.
MINING PATENT TO JOINT LOCATORS — SURRENDER OF PRIOR EQUITIES —
    ESTOPPEL — CONCLUSIVENESS OF PATENT. — Whatever may have been
    the prior rights or equities of one of several mining locators to whom a
    patent has been issued, they were voluntarily surrendered when he per-
    mitted and joined in the location upon which the patent was based; and
    the patent is conclusive, as against his devisees claiming under such

prior equities, that the location was valid, and was made upon unappropriated mineral land.

PARTITION — WHEN SALE MAY BE ORDERED — BURDEN OF PROOF. — As a rule, the Code of Civil Procedure requires partition, and the party asking for a sale instead of a partition has the burden of proving that a partition cannot be made without *great* prejudice to the owners.

ID. — PARTITION OF MINING CLAIMS — QUESTION OF FACT — JUDICIAL NOTICE — CONFLICTING EVIDENCE — REVIEW ON APPEAL. — Whether or not a partition of placer-mining claims can be made without great prejudice to the owners, is a question of fact, the decision of which is not to be aided by judicial notice of any fact or circumstance not proved; and if the evidence is substantially conflicting as to whether it can be made without great or any prejudice to the owners, the decision of the lower court ordering a partition will be sustained on appeal.

ID. — MISJOINDER OF PARTIES — JOINDER OF PLAINTIFF IN DOUBLE CAPACITY — RIGHT OF DEFENDANTS TO OBJECT ON APPEAL. — Where a plaintiff in an action of partition sues in her individual capacity, and also in her capacity as administratrix, and the decree as to the appellant's interest in the land partitioned is the same as it would have been if the administratrix had not been a party, and the relief granted to the administratrix is in no wise to the prejudice of the appellant, an objection that there is a misjoinder of the administratrix will not be considered upon appeal.

APPEAL from an interlocutory decree of the Superior Court of Calaveras County, and from an order denying a new trial.

The facts are stated in the opinion.

*Ira H. Reed, Reddick & Solinsky,* and *Paul C. Morf,* for Appellants.

*W. H. H. Hart, Aylett R. Cotton, T. W. Nowlin,* and *Thomas B. Bishop,* for Respondent.

VANCLIEF, C.—A. M. Mitchell died intestate in February, 1882, seised of undivided parts of two placer-mining claims situated in Calaveras County, adjoining each other. The plaintiff, Sarah Mitchell, is the widow, administratrix, and one of the heirs of A. M. Mitchell, and individually, and as administratrix, brought this action for a partition of said mining claims, making the other heirs — the children of A. M. Mitchell, and the other tenants in common, the devisees of John Batten, deceased

— defendants. One of the claims sought to be partitioned is known as the Bowling Green Placer Mine, containing 152 acres, and the other is called the Dashaway Placer Mine, and contains about 154 acres. The complaint alleges that Mitchell died seised of seven twelfths of the Bowling Green claim and of five twelfths of the Dashaway claim; and that the devisees of John Batten own five twelfths of the Bowling Green and seven twelfths of the Dashaway. The prayer is, that the whole body of land constituted of these two claims be partitioned into two parts, giving to the heirs of Mitchell one part, equal in value to their alleged undivided interest in both claims, and to the devisees of Batten the other part, equal in value to their alleged undivided interests in both claims.

It appears that the Bowling Green claim was located upon public mineral land in January, 1873, by and in the names of John Batten, Thomas Batten, George Batten, A. M. Mitchell, Edward Thomas, William Thomas, A. B. Preston, and W. D. Newton, — eight persons being necessary to locate the 152 acres of which it was composed. Upon this location a United States patent was issued June 15, 1883, to John Batten and the heirs of A. M. Mitchell, — John Batten and Mitchell having acquired the titles of all the other locators.

It also appears that the Dashaway claim was located upon public mineral land on March 23, 1876, by and in the names of Joseph Pownell, W. Mansfield, G. Wing, W. G. Long, D. McLean, A. M. Mitchell, John Rolls, and John Batten. Upon this location a United States patent issued March 17, 1884, to John Batten and the heirs of A. M. Mitchell, the other locators having conveyed their interests to Batten and Mitchell, or to one of them, before the patent was issued.

There is no question that it appears, from the conveyances of the other locators to John Batten, and to A. M. Mitchell, that the heirs of Mitchell are entitled to seven

twelfths of the Bowling Green, and five twelfths of the Dashaway, as alleged in the complaint. But, in their cross-complaint, the devisees of John Batten alleged that Mitchell acquired the interests of some of the original locators in such manner and under such circumstances as that he should be adjudged an involuntary or constructive trustee of those interests for the use and benefit of the devisees of John Batten, who are defendants and cross-complainants herein. The result of this claim, if sustained, would be to give to these devisees three fifths of the Bowling Green and two thirds of the Dashaway.

The trial court found the interests of the respective parties to be as alleged in the complaint, and also found all other material issues in favor of the heirs of Mitchell, and rendered an interlocutory decree accordingly, ordering a partition of said claims so as to give to the heirs of Mitchell a portion of the Bowling Green equal in value to the undivided seven twelfths thereof, and a portion of the Dashaway equal in value to the undivided five twelfths thereof, and giving to the devisees of Batten the remainder of each claim, and appointing referees to make the partition.

The devisees of Batten appeal from the interlocutory decree, and also from an order denying their motion for a new trial.

1. Counsel for appellants contend that the court erred in not finding and decreeing that, at the time of his death, Mitchell held the legal title to three twentieths of the Bowling Green mine, in trust, for John Batten, and one twelfth of the Dashaway mine, in trust, for John Batten and John Rolls.

The principal grounds upon which counsel rest this point, as stated in the cross-complaint, and as the evidence on the part of the appellants tends to prove, are substantially as follows: —

In January, 1873, John Batten, his two sons,— Thomas and George Batten,—A. M. Mitchell, and Ed-

ward Thomas came to an understanding and agreement to make a location of a portion of the mineral land which they and others afterward located as the Bowling Green claim. After examining the ground, they concluded to locate 160 acres, which was sixty acres more than five persons were entitled to locate under the act of Congress of 1872. It was thereupon suggested, probably by Mitchell, and agreed to by all the others, that they should use the names of three additional persons as locators who would voluntarily convey their interest to the company of five after the location should be completed. For this purpose Mitchell proposed the names of Preston and Newton, and Edward Thomas proposed William Thomas; and it was agreed by all that these names should be used as they were used. Between August 20, 1873, and November 10, 1874, George and Thomas Batten conveyed their interests to their father, John Batten. In October, 1873, William Thomas conveyed his interest to John Batten, Edward Thomas, and A. M. Mitchell without any consideration. In November, 1875, Preston and Newton, without consideration, conveyed their interests to Mitchell. In November, 1879, Edward Thomas, for a valuable consideration, conveyed all his interest to Mitchell. Thus John Batten and Mitchell acquired the title of all the other locators; and upon this title the patent from the government was obtained. It is upon the conveyances from Newton and Preston to Mitchell that the constructive trust as to the Bowling Green claim is alleged to have arisen.

In the location of the Dashaway claim a similar state of facts existed, with the difference that the names of five dummy locators were used, viz., Joseph Pownell, William Mansfield, G. Wing, W. G. Long, and D. McLean, the real locators being John Batten, A. M. Mitchell, and John Rolls. Of these sham locators, one of them — W. G. Long — conveyed all his interest to Mitchell on the thirtieth day of March, 1880, without any valuable con-

sideration.    Hence it is claimed that Mitchell held two thirds of the title thus acquired from Long (equal to one twelfth of the whole) in trust for Batten and Rolls; and that, as Batten afterward purchased the entire interest of Rolls, his devisees are equitably entitled to this one twelfth part of the Dashaway claim.

It is not claimed by counsel for appellants that there was any express trust, either as to the Bowling Green or the Dashaway claim; but they contend that it was understood and agreed, in both cases, by and between the real locators, that the names of the dummy locators were to be used for the equal benefit of the real locators, and that the taking of conveyances to himself, for his individual benefit, by Mitchell, from Newton, Preston, and Long, in violation of this understanding and agreement, was such a breach of confidence and good faith as that he should be adjudged a trustee for his associates.

As to the original understandings and agreements in regard to the division of the land to be acquired through the sham locators, and in regard to whether Mitchell took the conveyances in question in violation thereof, and thereby acquired an unfair advantage of his associates, the evidence is mostly circumstantial and more or less conflicting; but there is no conflict and no question that, as matter of fact, none of the three locators of the Bowling Green, or of the five locators of the Dashaway, above named as sham locators, had or pretended to have any interest whatever in either of those locations.    They merely permitted their names to be used as locators to enable their friends to obtain possession of and patents for more mineral land than they were entitled to by law, and they executed conveyances to such friends without any valuable or lawful consideration therefor.

Section 2331 of the United States Revised Statutes provides that, after the tenth day of May, 1872, "no such location [of placer claims] shall include more than

twenty acres for each individual claimant." The policy
and object of this law are to limit the quantity of placer
mineral land, which may be located by one person, to
twenty acres; and although one person may obtain a
patent for more than twenty acres, he can do so only by
representing to the government that he is a purchaser
of the excess from one or more *bona fide* locators whose
locations were made in conformity with the above statu-
tory limitation as to quantity. For this purpose he is
required to present, with his application for a patent, an
authenticated abstract of his title showing its derivation
from lawful locations.

The alleged agreements and understandings relied
upon by the appellants are contrary to the express pro-
vision of the Revised Statutes above quoted, and contrary
to the policy of the express laws of the United States
regulating the occupation, possession, and sale of the
public mineral lands. The avowed purposes of those
agreements were, that, by false and fraudulent repre-
sentations, the parties thereto should obtain from
the government the title to about 150 acres of min-
eral land in violation of express provisions of law, and
that they should make an equal division of the land
thus obtained among themselves. Now that they have
succeeded in thus obtaining the land, will a court
of equity stoop to investigate and enforce those parts
of the agreements and understandings relating to a
division of that land among the conspirators? I think
not. (Civ. Code, sec. 1667; *Damrell* v. *Meyer*, 40 Cal.
166; *Huston* v. *Walker*, 47 Cal. 484; *Snow* v. *Kimmer*, 52
Cal. 624.)

The following language of this court in *Beard* v.
*Beard*, 65 Cal. 356, is applicable to this case: "The en-
tire transaction between the parties is tainted by fraud,
and the plaintiff must content himself with so much of
the benefit of it as he has already secured unchallenged.
The reason why the common law says such contracts

are void is for the public good, and we think that the public good requires that this transaction should be held to be void in all its parts. It was a contract which contemplated the perpetration of a fraud upon a court of justice, and we think it the duty of courts to discountenance and discourage such transactions to the utmost limit of their power."

In the case at bar a fraud upon the government was not only contemplated, but was actually and successfully perpetrated; and the appellants are shown to have "secured unchallenged" about one half of the benefits thereof, with which they should content themselves.

See also Pomeroy's Equity Jurisdiction, section 401, where, among other things in point here, it is said: "Where two or more have entered into a fraudulent scheme for the purpose of obtaining property in which all are to share, and the scheme has been carried out so that all the results of the fraud are in the hands of one of the parties, a court of equity will not interfere on behalf of the others to aid them in obtaining their shares, but will leave the parties in the position where they have placed themselves."

Counsel for appellants further contend that John Batten was in possession of and had mined upon a portion of the Bowling Green claim prior to the location thereof upon which the patent was obtained; and that this should be considered as an equity in favor of his devisees. It appears that he had inclosed, by fencing, about fifty acres for agricultural purposes several years before the location of the Bowling Green claim, and that he had mined in portions of the field thus inclosed. It also appears that a considerable portion of this field was taken into the location of the Bowling Green claim, and forms a part of it; but there is not sufficient evidence to prove that Batten ever located any part of the inclosure as a mining claim, or that he claimed possession by virtue of any such location prior to the location of the

Bowling Green claim.  It seems to have been understood by all the locators that all the mineral land within Batten's inclosure was open and subject to location for mining purposes by any person qualified to locate; and one of the express reasons for locating the Bowling Green claim was to prevent others from locating mining claims within Batten's field.  But whatever may have been the prior rights or equities of Batten, he voluntarily surrendered them to the locators of the Bowling Green claim; and by his application for a patent upon the Bowling Green location, he represented to the government that that location was valid and lawful, which implied that the land was vacant mineral land, unoccupied by any valid location prior to that of the Bowling Green.  Under these circumstances, the patent itself is conclusive, as against the devisees of Batten, that the location upon which it was founded was a valid location upon unappropriated mineral land.

The appellants also claim a similar equity in the Dashaway Mine, founded upon alleged prior rights or equities of John Rolls.  But these are quite as destitute of merit as those of John Batten in the Bowling Green claim, and may be disposed of in the same way.

John Rolls was one of the three real locators of the Dashaway claim, and, on March 10, 1882, conveyed all his "right, title, and interest" in and to that claim, as afterward described in the patent, to John Batten.  There is no evidence tending to prove that Rolls, after the location of the Dashaway claim, by the three real and five dummy locators, claimed any right or interest therein as thus located, other than such as he acquired by virtue of that location; nor does his deed to Batten purport to convey any other or prior interest; and it was upon that location that Batten and Mitchell applied for and obtained the patent for the Dashaway claim, thereby representing to the government that the location was lawful and valid.

2. It is contended that the court erred in decreeing a partition of the property, and in refusing to order a sale and division of the proceeds.

As a rule, the Code of Civil Procedure requires partition, but, as an exception to this rule, provides for a sale, "if it appear that partition cannot be made without great prejudice to the owners." (Sec. 752.) Section 763 provides that "if it appear by the evidence, . . . . to the satisfaction of the court, that the property or any part of it is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof; otherwise, upon the requisite proofs being made, it must order a partition according to the respective rights of the parties as ascertained by the court."

Whether or not a partition can be made without great prejudice to the owners is a question of fact, the decision of which is not to be aided by judicial notice of any fact or circumstance not proved.

Under the code rule, the party asking for a sale instead of a partition has the burden of proving that a partition cannot be made without *great* prejudice to the owners. The appellants assumed this burden, but, in the opinion of the trial court, failed to sustain it. The evidence on this point is substantially conflicting as to whether or not a partition would be prejudicial to the owners *in any degree*. On the part of the devisees of Batten, Rolls, Joy, and George Batten testified that in their opinion a partition would be prejudicial to the interests of the owners, and that a sale would be preferable. On the part of the heirs of Mitchell, Livingston, Preston, and Sarah Mitchell testified that in their opinion a partition would not be prejudicial to the owners, and would be preferable to a sale. The witnesses on both sides stated the reasons for their opinions. I therefore think the finding that partition can be made without great prejudice to the owners is justified by the evidence.

3. It is contended that the court erred in overruling the demurrer to the complaint, on the ground of misjoinder of Sarah Mitchell, administratrix, as a party plaintiff, with Sarah Mitchell in her individual capacity.

While I am inclined to the opinion that the court did not err in overruling the demurrer, I think it unnecessary to a proper and just disposition of this appeal to decide the question, since it appears that the alleged error, admitting it to be such, did not injure the appellants. The decree as to the appellants' interest in the land is the same as it must have been if the administratrix had not been a party. No relief to which appellants have a right to object was granted to the administratrix. The decree limits the right of the administratrix to sell land for the payment of debts of the estate, to the portion allotted to the heirs of Mitchell by the partition, which is certainly not to the prejudice of the appellants. With this exception, the joinder of the administratrix as a party had no effect upon the trial or upon the decree.

I think the decree and order appealed from should be affirmed.

HAYNE, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the decree and order appealed from are affirmed.

Rehearing denied.