FLORA J. WILLIAMS, Appellant, v. WELLS FARGO BANK & UNION TRUST COMPANY (a Banking Corporation) et al., Respondents.

Edwin H. Williams for Appellant.

George H. Johnston for Respondents.

ADAMS, P. J.—Appeal from a judgment in an action for partition of real property.

Plaintiff, the owner of an undivided one-fourth interest in 310 acres of land in Merced County, brought this action praying for partition of said land between herself and defendant bank, the owner of an undivided three-fourths held in trust for Helen P. Lansdale. The bank and Mrs. Lansdale filed a joint answer alleging that the property could not be partitioned in kind without great prejudice to the owners, and after trial the court so found and ordered the prop erty sold. Plaintiff appeals, contending that the evidence is insufficient to support such finding. The case is before us on a bill of exceptions, containing the testimony of but two witnesses, both of whom were called for defendants.

The land in controversy consists of a half section, excepting a ten-acre piece belonging to Shell Oil Company. It is rectangular in shape, a mile long and half a mile wide. It is nearly flat, with a gentle uniform slope from west to east and a more gradual slope from north to south. The land is used to raise barley, and when the action was brought was leased to R. J. Butts, who owns and farms adjoining lands. For years the custom has been to let it lie fallow one year and to take off the barley crop the next year. The stubble is pastured after the barley is harvested. The main county road runs along the eastern boundary of the tract, there is a right of way running along the southern boundary for three-quarters of a mile, and another county road contacts the northeast corner of the property. There are no buildings on the land, and the only improvements consist of a well, windmill, pump and tank in the northwest corner.

Title to the property is free and clear of all liens and encumbrances.

Defendants claim that the property cannot be partitioned in kind because it is spotted in character, different portions thereof varying in value from $20 to $27 an acre; that three different lines have been surveyed across the property for the proposed canal of the Central Valley Water Project, and as yet no one knows which line of survey (if any) will be actually used when the canal is constructed; and that the land, considered as *dry farming land*, is not of sufficient size to permit it to be divided without greatly increasing the cost of farming the portions as units.

The rule in California, and generally elsewhere, is that partition in kind is favored by the law, and that a sale will be ordered only when it is necessary to prevent great prejudice to the owners. In *Mitchell* v. *Cline*, 84 Cal. 409, 418 [24 P. 164], it is said: "Under the code rule, the party asking for a sale instead of a partition has the burden of proving that a partition cannot be made without *great* prejudice to the owners." (Italics by the court.)

It is said in 47 Corpus Juris 442, section 436: "As between a partition in kind or sale of land for division, the courts will favor a partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will, which, it has been said, should not be done except in cases of *imperious necessity*. It is no objection to a partition in kind that some of the co-tenants prefer a sale to a partition. . . ." (Italics ours.)

In 40 Am.Jur. 72-74, it is said that at common law and in equity as well, in proceedings for the partition of land, the co-tenants were entitled to partition in kind if they so demanded, regardless of the difficulty and inconvenience of partitionment; that the right to have the premises sold if they are of an impartible nature has been provided for by statute, but that the burden of proof to establish the necessary requisites to a sale rather than a partition in kind, is on the party alleging the necessity and advisability of such sale, that a sale cannot be decreed merely to advance the interests of one of the owners; and that before ordering a sale the court must ascertain that the interests of all will be promoted. It is also said that the generally accepted test of whether a partition in kind will result in great prejudice to the owners is whether the value of the share of each in case of a partition will be materially less than his share of the money equiv-

alent that could probably be obtained for the whole; that because the land may vary in quality, locality and improvements and is not of uniform value, and if a partition in kind be made some of the shares will be of small area, does not necessarily warrant a sale. See 20 R.C.L. 773-774 to the same effect.

In *East Shore Co.* v. *Richmond Belt Ry.*, 172 Cal. 174 [155 P. 999], a tract of land to be partitioned consisted of tideland and upland, and it was contended that great differences in value existed between the different portions of the tract and therefore it could not advantageously be partitioned in kind. But the court said that the presumption is that land held in common tenancy can be equitably divided between the parties by allotting to each a tract in severalty equal to his interest in the whole, measured by value; that it is only where the contrary appears by the evidence that a sale may be ordered; and that the burden of proof rests upon him who contends for a sale to show that it appears by the evidence that a partition would prejudice the owners.

In *Thompson Estate Co.* v. *Kamm,* 107 Or. 61 [213 P. 417, 28 A.L.R. 722], property held in common consisted of city lots with store buildings upon them. Because the property could not be divided, one-quarter to three-quarters, without cutting a store in two, the trial court ordered sale. The Supreme Court, however, reversed the judgment, saying that it was most desirable that a division of the property be had and least desirable that a sale be made; that it was practically agreed in the evidence that there was no great demand for realty in the part of the city in which the land was situated, and that a sale would be at a sacrifice; that plainly it would be disadvantageous to sell the property on a dull market since both parties would suffer by such a proceeding; that the financial interest of the parties should receive care at the hands of the court, and that accordingly an adjustment proposed by a majority of the referees whereby certain of the lands were to be set off to each of the parties and owelty paid by one party to the other was reasonable and fair.

In *Williamson Inv. Co.* v. *Williamson,* 96 Wash. 529 [165 P. 385], the question was whether a lot 50 feet by 90 feet should be partitioned between the parties or sold. A building covered it and an adjoining lot but a wall separated them on the property line. The building on the land in controversy was shown to be very old, and one of the referees said that the property could be partitioned without any great

prejudice, though you could as a rule get a better price for a 50-foot lot than a 25-foot one. There was evidence that the real estate market was then depressed, also that to cut the lot in two would reduce the aggregate value 25 to 35 per cent, though another witness said it would be a "toss up" as to whether sale or partition would be advisable. The trial court decided in favor of a partition, and the Supreme Court affirmed, saying that courts still favor partition in kind rather than a sale; that an owner has the right to retain his investment in the form in which he has it so long as it can be done without great prejudice to his co-tenant; that the power to convert real estate into money against the owner is an extraordinary and dangerous power and ought never to be exercised unless the necessity therefor is clearly established (*Vesper* v. *Farnsworth,* 40 Wis. 357); that a sale should not be ordered unless partition in kind cannot be made without material pecuniary loss, and that unless the interests of the parties owning the land will be promoted by the sale such sale should not be made except in cases of imperious necessity. That court cited *East Shore Co.* v. *Richmond Belt Ry.* and *Mitchell* v. *Cline, supra,* to the effect that there is a presumption that land held in common can be equitably divided and that the burden of proof to show great prejudice rests upon him who asserts it. It also said that the fact that the aggregate value of the halves would be somewhat less after partition than the value of the whole would not force one of the owners to change the form of his holding and compel a sale.

In *Blanchard* v. *Cross,* 97 Vt. 370 [123 A. 382], the court said that the law favors a partition in kind rather than a sale, and it must be shown that a sale will be for the benefit of all the owners; that the test is whether the aggregate value of the several parts will be materially less than the value if owned by one person, or his share of the money more than the value of his share of the land in case of partition.

In *Chittenden* v. *Gates,* 18 App.Div. 169 [45 N.Y.S. 768], there was a decree ordering sale of "a long, narrow beach, or tongue of sand, lying between the ocean and Jamaica Bay . . . containing about 1000 acres." In reversing this decree the appellate court said that it was difficult to see how property of any description could be more susceptible of division into two portions; that any possible difference in value of the lots arising from their proximity to the extreme point

of the peninsula and the part adjacent to the mainland could be adjusted. But, if there should be any injustice likely to arise from inequality of values in actual partition, the New York Code, section 1587, provided that the court might in the final judgment, award compensation to be made by one party to the other for equality of partition. And in that case the court cited and quoted from *Clason* v. *Clason*, 6 Paige 541, 546, to the effect that a farm containing 370 acres of land must be very peculiarly situated to render it impracticable to divide it into three parts without great prejudice to the owners, especially where the court might decree a pecuniary compensation to be made by one party to the other for owelty of partition; and that a suitor who would urge such an objection to actual partition of farm lands would be almost unheard to speak.

In *Pigeon River Lumber Co.* v. *McDougall*, 169 Minn. 83 [210 N.W. 850], the Supreme Court reversed a decree of the lower court ordering a sale rather than a partition of the land involved in the action. It said that the evidence indicated that plaintiff was the only bidder in sight (it owning adjacent land which would be necessary for a power development), that the evidence did not disclose that any outside party was ready to bid at a fair price, and that if the lands were ever to be acquired by condemnation, partition in kind would be fairest, and better than a forced sale.

In *Croston* v. *Male*, 56 W.Va. 205 [49 S.E. 136, 107 Am. St.Rep. 918], interests in three irregular adjoining tracts belonged to three different groups of owners. Commissioners recommended a sale, stating that the tracts varied in value, one being timbered, one almost valueless, and the third consisting of a farm. A decree directing sale was reversed, the court saying that the commissioners had not reported that a division in kind would make the aggregate value of the several parcels less than the value of the property as a whole; that a sale should not be made except in cases of imperious necessity, and that forcible conversion of property into money should be avoided wherever possible.

In light of the principles set forth in the foregoing cases we believe that a partition in kind of the property here involved should be ordered. There is no evidence that a sale will make the aggregate value of the land any greater than the value of the parcels into which it may be divided, and there is no evidence that if sold, anything like a fair price may be secured. On the contrary, according to the testi-

mony of Mr. Lansdale, husband of the defendant Helen P. Lansdale, it would be hard to sell the land; that the only way you can get a tenant is if you are fortunate enough to find a tenant who owns and controls adjoining property and has his equipment and operations there. This would appear to limit possible buyers to the Lansdales who own adjoining land on one side, and Butts owning land on the other side. On the other hand, Lansdale testified that there had been no difficulty in finding a tenant for the land; and no reason appears why, if it is partitioned it could not be leased for barley land in two parcels as well as one. Obviously no disadvantage in this respect could result to Mrs. Lansdale, since it could as well be used in connection with their adjoining land as with the land of Butts; also it appears that the Lansdales are now utilizing water from the well on the premises by piping it to the Lansdale property, also that Lansdale has bought the pasturage on the tract for his cattle. Furthermore he said that he had advised his wife to purchase her interest in the land in the hope and expectation that it would become irrigated land by virtue of the construction of a canal by the Central Valley Water Project.

It is contended by respondents that the fact that three different surveys for such canal have been made across the land make partition in kind impossible. We are not impressed with this argument. The fact that surveys have been made is no assurance that a canal will be built on the line of any one of them, or at all; and, if such future development should occur it would be of advantage to plaintiff to hold her share of the land in contemplation of same rather than to sell it where there are no buyers in sight except the Lansdales to whose advantage alone a present sale would result. As was said in the Pigeon River Lumber Company case, *supra*, where condemnation (for a dam site) would probably bring a better price to owners after partition in kind, a sale should not be ordered, particularly where the only probable bidder was the plaintiff in the action whose interests would be best served by a low price.

Appellant also contends on this appeal that there was no evidence justifying the finding of the trial court that the services of the attorney for defendants "are and will be for the common benefit of plaintiff and defendants," and no justification for its conclusion that fees should be allowed said attorney, when no allowance is made for plaintiff's attorney. Respondents in their brief do not attempt to justify the

inclusion of the foregoing finding of the court; they merely say that until the case is concluded it is not possible to determine what portion, "if any," of the services of plaintiff's attorney have been for the common benefit of all parties. This must be equally true as to the services of defendants' attorney. There is no allegation in defendants' answer that the services of their attorney are or will be of the common or any benefit to plaintiff and defendants, and no evidence as to attorney's fees or services was introduced by the parties.

Section 796 of the Code of Civil Procedure provides that the costs of partition, including reasonable attorney's fees expended by the plaintiff or either of the defendants for the common benefit, must be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interests therein, and may be included and specified in the judgment. It is said in 20 Cal.Jur. 639, that costs or attorneys' fees may not be allowed until the final judgment is entered, and should not be included in the interlocutory decree.

We conclude that the allegation that the services of defendants' attorney are and will be for the common benefit of plaintiff and defendants has no place in the findings, that whether the services of the attorneys for either or both parties have been for the common benefit, and the reasonable value thereof is matter for determination at the conclusion of the litigation, at which time such fees may be specified and included in the final judgment. But in view of the decisions in *Capuccio* v. *Caire* in 207 Cal. 200, 207 [277 P. 475], and in 215 Cal. 518 [11 P.2d 1097], it cannot be said that none of the services of counsel for plaintiff were for the common benefit.

The judgment is reversed with instructions to the trial court to order partition of the property in kind according to the respective rights of the parties.

Schottky, J. pro tem., and Thompson, J., concurred.