[Civ. No. 21102. Third Dist. Sept. 13, 1982.]

BUTTE CREEK ISLAND RANCH, Plaintiff and Respondent, v. WILLIAM H. CRIM III, Defendant and Appellant.

COUNSEL

Brobeck, Phleger & Harrison, Vincent Paul Finigan, Jr., and Thomas M. Peterson for Defendant and Appellant.

Harris & Sanford, John T. Harris and Thomas G. Sanford for Plaintiff and Respondent.

OPINION

SPARKS, J.—Defendant William H. Crim III, appeals from an interlocutory judgment of partition in favor of plaintiff Butte Creek Island Ranch, a general partnership. The judgment ordered a partition of real property by sale with division of the proceeds. Defendant contends that the trial court erred in ordering the sale of the real property rather than dividing it in kind. We agree and reverse the judgment.

FACTS

Plaintiff and defendant each own an undivided one-half interest in two parcels of real property in the Butte Sink area of Butte County. The Butte Sink area is one of the prime waterfowl areas in the state and the historic use of the contested property has been for waterfowl

hunting. The properties can best be described with the aid of an illustration:

The northerly parcel, parcel A, consists of approximately 40 acres of real property. It has been used primarily as a support facility for the waterfowl hunting activities carried on in parcel B. Located on this northerly parcel are a sleep house, kitchen-dining building, and a garage and barn. Both the sleep house and the kitchen-dining building are set up for overnight accommodations. Although old, they are suitable for their duck club usage. The garage and barn are in poor repair and of marginal value. Also located on parcel A is a graded landing strip for small aircraft.

The southerly parcel, parcel B, consists of approximately 181 acres. This parcel is referred to as an "island" since it has Butte Creek on its western side and Sanborn Slough on its eastern side. This is the parcel on which the actual waterfowl hunting takes place. In preparation for the waterfowl season, water is pumped from Sanborn Slough to flood natural low areas on the land and thereby create the habitat preferred by waterfowl.

Defendant first began visiting the property in 1948 at age 11. At that time he went as the guest of Dr. Philip Baxter, plaintiff's predecessor in interest. He made yearly visits to the property as the guest of Dr. Baxter from that time until 1970. In 1970 defendant acquired an undivided one-half interest in the property from Dr. Baxter's sister, Ruth Baxter Dietrich. He has continued to use the property as owner since that time.

In 1978 plaintiff acquired its interest in the property from either the widow or the estate of Dr. Baxter. It sought to purchase defendant's interest and when he indicated that he did not desire to sell, this suit for a partition was filed. Plaintiff and defendant stipulated pursuant to Code of Civil Procedure section 873.040 to the appointment of Mr. Peter Brennan as referee in the matter.

The referee prepared a report in which he concluded that the most equitable division would be to divide each parcel into two separate north and south parcels. Each cotenant would receive one-half of parcel B for hunting purposes and one-half of parcel A for support purposes with access easements on existing paths. The referee concluded: "The division of the property is the most equitable solution to the problem presented since it omits the vagaries of the market and leaves the parties whole. [¶] The alterative [sic] of sale and distribution of the proceeds would leave either one or both of the parties in less than whole position in two primary respects. First, capital gains taxes would have to be paid, leaving insufficient funds to purchase a similar property. [¶] Secondly, and more important, the extreme scarcity of properties similar to the subject with respect to location, use, and general amenities, would effectively preclude acquisition of a replacement."

Plaintiff moved to confirm only part of the report of the referee. Specifically, plaintiff asserted that the division in kind of parcel B was fair and equitable and sought to have it confirmed, but sought the sale of parcel A and division of the proceeds. John Simmons, one of plaintiff's general partners, filed a declaration in which he stated that the division of parcel B was fair and should be confirmed. Defendant opposed the sale of parcel A. A hearing was held on the motion, but decision was postponed due to a tentative settlement. Plaintiff eventually notified that court that the tentative settlement had not been consummated and that it would amend its motion to object to the referee's report in its entirety. Such an amendment was filed and plaintiff now moved for the sale of the entire property.

At the hearing on the amended motion plaintiff presented evidence that at the time it had taken the position that division of parcel B in kind was fair it had hoped to acquire a lease on a 67-acre parcel for use in conjunction with its one-half portion of parcel B. Since it was unable to acquire the lease on the 67-acre parcel, it had changed its mind and now desires all of parcel B for itself. Plaintiff candidly admitted that it intends to buy parcel B at the partition sale, and even suggested that it would desire to limit the sale to the cotenants.

In connection with its contention that sale of the property would be the most equitable solution plaintiff presented evidence that "more is better." Each of the two testifying general partners based his testimony upon the assumption that after the partition sale plaintiff would be the sole owner of the entire property. Both partners noted the advantages to plaintiff in owning the entire 181-acre parcel rather than merely owning one-half of that parcel. Plaintiff also presented testimony of an expert in management of waterfowl property. He explained the management economies that might be available to plaintiff in managing and developing a 181-acre parcel rather than a 90-plus acre parcel.

Defendant testified that he does not desire to dispose of his interest in the property. If a sale were ordered he could not afford to participate in the bidding and would therefore be ousted from the property. He wished the court to divide the property in the manner suggested by the referee. In the event the parcels were divided into north and south parcels he would accept either portion of the original parcels.

At the conclusion of the hearing the trial court announced that parcel A, the 40-acre parcel, would be divided in kind with a provision for the movement of one building onto the southern half. It announced that parcel B, the 181-acre parcel, would be sold. Since both sides had testified that it would be less equitable to divide parcel B, the court stated it would order parcel B sold. An interlocutory judgment ordering the sale of parcel B and the division of parcel A was entered. Defendant appeals from the judgment insofar as it orders the sale of parcel B. No issue is raised herein concerning the judgment insofar as it orders the division of parcel A.

## DISCUSSION

At common law and in equity cotenants were entitled to partition in kind regardless of the difficulty or inconvenience of such a division. (59

Am.Jur.2d, Partition, § 118, p. 864.) Sale was possible only with consent of all of the coowners. (*Ibid.*) Statutory provisions in most jurisdictions now provide for the power of a court to order a sale in a partition action where the property is impartible or division would be manifestly to the prejudice of the parties. (*Ibid.*) "The right of selling the land and dividing the proceeds, given by statute, is an innovation upon the common law, and since it takes away from the owner the right to keep his freehold in kind, it is to be strictly construed; it must appear from the record that an equal division cannot be made, or that a sale of the land will better promote the interests of all parties than will a partition in kind." (*Id.*, at p. 865.)

■ California law has been in accord. Partition in kind is favored in law and in the absence of proof to the contrary the presumption in favor of in kind division will prevail. (See *Williams* v. *Wells Fargo Bank* (1943) 56 Cal.App.2d 645, 647 [133 P.2d 73].) A forced sale is strongly disfavored. (*Ibid.*)

In 1976, after a study by the Law Revision Commission, California's scheme for partition actions was amended. (Stats. 1976, ch. 73, p. 107.) Of particular interest here was the repeal of Code of Civil Procedure sections 752, 752a, and 763, and the enactment of Code of Civil Procedure sections 872.810 and 872.820. The former sections provided for division by sale only where physical division would cause "great prejudice" to the parties. The new provisions provide for a presumption in favor of physical division which will control in the absence of proof that under the circumstances sale would be "more equitable" than division. In proposing this change the Law Revision Commission explained that the presumption in favor of physical division should continue but that "[i]n many modern transactions, sale of the property is preferable to physical division since the value of the divided parcels frequently will not equal the value of the whole parcel before division. Moreover, physical division may be impossible due to zoning restrictions or may be highly impractical, particularly in the case of urban property. [¶] The Commission recommends that partition by physical division be required unless sale would be 'more equitable.' This new standard would in effect preserve the traditional preference for physical division while broadening the use of partition by sale." (13 Cal. Law Revision Com. Rep., Reports Recommendations and Studies (1975-1976) pp. 413-414.)

The 1976 revision of the California partition provisions did not change the preference in favor of physical division. (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 757 [164 Cal.Rptr. 727].) Partition in kind is favored "since this does not disturb the existing form of inheritance or compel a person to sell his property against his will. Forced sales are strongly disfavored. [Citation.]" (*Ibid.*) The burden of proof remains upon the party endeavoring to force a sale. (*Ibid.*) Thus, while the new standard may be said to expand the availability of partition sales, it does not permit a partition sale in the absence of sufficient proof of the equities of such a method of partition.

There are two types of evidence which have been held sufficient to justify a partition sale of property rather than physical division. The first is evidence that the property is so situated that a division into subparcels of equal value cannot be made. (59 Am.Jur.2d, *supra*, at p. 864.) This test is not met by evidence that a portion of the property is not equal to the whole, for that is always the case in a partition action. Nor is this test met by evidence that the land is not "fungible" or uniform in character. (See *Williams v. Wells Fargo Bank, supra*, 56 Cal.App.2d at pp. 647-648.) In order to meet this test the party desiring a partition sale must show that the land cannot be divided equally. (*East Shore Co. v. Richmond Belt Railway* (1916) 172 Cal. 174, 180 [155 P. 999].) An example of this type of situation is provided in *Sting v. Beckham* (1949) 94 Cal.App.2d 823 [211 P.2d 586], where it was shown that the major value of the land consisted of a water well and that without the well the land had little value. In that case physical division of the land would have required an award of the subparcel with the well to one party to the manifest prejudice of the other party. Another example is provided in *Priddel v. Shankie* (1945) 69 Cal.App.2d 319 [159 P.2d 438], which involved a small (40 feet by 140 feet) inside lot with structures located in such a way as to preclude equal partition.

The referee appointed by stipulation of the parties concluded that parcel B was capable of physical division and that this was the most equitable solution. That parcel could be divided into a north and a south parcel of approximately 90.5 acres each and provision could be made for access easements over existing paths. Plaintiff initially conceded the fairness of such a division before a change of mind based upon factors extraneous to the feasibility of physical division. Upon such a change of heart it was incumbent upon plaintiff to prove that the land

was not capable of equal division; yet the record is insufficient in this regard. It may be admitted, as defendant in fact conceded, that ownership of the entire parcel B would be more advantageous to plaintiff. That concession, however, does nothing to establish that the property is not capable of equal division.[1] Moreover, any potential prejudice through an imprecise division was obviated by defendant's offer to permit plaintiff to select which of the subparcels it desired. Sale of the property is thus not supported by this first type of evidence.

The second type of evidence which supports a partition sale rather than physical division is economic evidence to the effect that, due to the particular situation of the land, the division of the land would substantially diminish the value of each party's interest. (See 59 Am.Jur.2d, *supra*, pp. 864-865.) The generally accepted test in this regard is whether a partition in kind would result in a cotenant receiving a portion of the land which would be worth materially less than the share of the money which could be obtained through sale of the land as a whole. (*Ibid.*) This is a purely economic test. If plaintiff, who demands that the land be sold, can receive a portion of the land through physical division and that portion could be sold for a sum equal to the amount it could realize through sale of the entire parcel then as a matter of law no economic prejudice can be shown. The manifest inequity of ousting an unwilling cotenant from the land where no economic detriment is suffered cannot be permitted. An example of this type of situation is provided in *Formosa Corp.* v. *Rogers* (1951) 108 Cal.App.2d 397 [239 P.2d 88], there a 17.4 acre movie studio had been developed in such a unique manner that physical division would result in damage to the aggregate value of the land in the amount of $1.5 million. (*Id.*, at p. 402.)

Plaintiff introduced no evidence whatsoever to establish that the aggregate economic value of the land would be diminished through

---

[1] It is true that a one-half subparcel will not have the same potential as the whole for development as a duck club, since it must be presumed that 181 acres has more potential than 90.5 acres for such purpose. That fact does not establish that the land cannot be divided into two subparcels of equal value. Nor does plaintiff's evidence that the land is not of absolutely uniform character establish such a fact. The question is whether the land may be equally divided with regard to value, not whether each subparcel will be identical to the other. (*East Shore Co.* v. *Richmond Belt Railway, supra,* 172 Cal. at p. 180.) The evidence is overwhelming that parcel B may be easily and effectively divided into two subparcels of equal or approximately equal value.

physical division.[2] Plaintiff's assertion that the evidence fails to establish that the aggregate value of the land would not be diminished through physical division misplaces the burden of proof. That burden was upon plaintiff as the cotenant who desired to force the sale of the land. The absence of evidence on the issue redounds to the benefit of defendant as the cotenant who desired to retain physical possession of the land.

Plaintiff directed no evidence towards proving that the land cannot be equally divided or that the aggregate economic value of the land would be diminished through division. Instead, plaintiff directed its evidence and argument towards proving the obvious conclusion that sole ownership of the entire 181 acres of parcel B would be more advantageous to it than would ownership of only one-half thereof. This is conceded but irrelevant. "A sale cannot be decreed in partition merely to advance the interests of one of the owners; before ordering a sale, the court must ascertain that the interests of all will thereby be promoted." (59 Am.Jur.2d, *supra*, at p. 865. See also *Williams* v. *Wells Fargo Bank, supra*, 56 Cal.App.2d at p. 647.) This is manifest in California's rule that physical division is required unless a sale is more equitable. "'[E]quity is equality'. In every instance where principles of equity are sought to be applied the idea of equality compels consideration of the rights of all parties concerned. [¶] Equality must be distinguished from expediency or individual solicitude." (*H. K. McCann Co.* v. *Week* (1931) 115 Cal.App. 393, 398 [1 P.2d 452].)

Plaintiff had and has no intention of yielding up physical possession of the land. It sought a forced sale of the land in order to acquire defendant's interest which he did not desire to sell. This is nothing short of the private condemnation of private land for private purposes, a result which is abhorrent to the rights of defendant as a freeholder. When the record is stripped of the obvious but irrelevant evidence that plaintiff would prefer to own all of parcel B this case presents a simple issue. The trial court was presented with two equal cotenants, neither of whom desired to yield up possession of the land, and no evidence that the land could not be equally divided or that such division would diminish the economic value of either cotenant's interest. Under such

---

[2]In fact, the only evidence on this issue indicated otherwise. The referee cited certain comparable sales in his report which showed that the highest per acre price in the area was obtained in the sale of a 40-acre parcel, a much smaller parcel than plaintiff would obtain through physical division of parcel B.

circumstances no result other than physical division was possible and the order that the land be sold was an abuse of discretion. The interlocutory judgment must therefore be reversed.

The judgment is reversed and the cause is remanded to the trial court with directions to divide the property in kind and to conduct such further proceedings as are necessary to effectuate such a division.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied October 12, 1982.