Filed 3/23/22  Dilonell v. Chandler CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| FRIDA DILONELL, | B310695 |
| Plaintiff and Appellant | (Los Angeles County Super. Ct. Nos. BC677717) |
| v. | |
| SUZANNE CHANDLER, | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

Andrew Schoettle for Plaintiff and Appellant.

Plotkin Marutani & Kaufman and Jay J. Plotkin for Defendant and Respondent.

_____

This is an appeal from an action originally begun in 2017 by plaintiff Alice Jackson, who sought partition by sale of a five-unit residential rental property in Inglewood in which she owned a 50 percent interest. Defendant Suzanne Chandler owned the remaining 50 percent interest. Ultimately, in January 2021, the trial court ordered Chandler and Jackson's successor-in-interest Frida Dilonell (appellant) to accept an offer of $1.050 million for the property from a third party.

Appellant appeals from the trial court's January 25 and 26, 2021, orders determining the third party offer to be the highest offer and ordering appellant to accept the offer. She contends the trial court abused its discretion in ordering the sale of the property to a third party when she submitted a higher but technically non-compliant offer. We affirm the trial court's orders.

## BACKGROUND

Although this action began in 2017, the dispute between the two owners of the property dates back to 2016, when appellant Dilonell first attempted to buy the property. Prior to that time, Jackson and Chandler had, for decades, shared ownership of the property at 703 Walnut Street without any apparent disagreements. They managed the property together until 2013, when they both signed a written agreement with MGConnection Premier Real Estate Services, a management and real estate company, to manage the property. Gail Anderson acted as the manager for MGConnection. In 2016, disputes arose between Jackson and Chandler over the management of the property, including payment of taxes and maintenance of the buildings.

2

In May 2016, after Chandler's mother died, Anderson suggested to Chandler that she sell the property. Anderson told Chandler that if she did not agree to sell, it was likely Jackson would file a partition action and force a sale. Anderson told Chandler the property was worth about $800,000, and Chandler agreed that Anderson could try to sell it.[1]

Anderson received a number of offers below $800,000. On May 12, 2016, Anderson told Chandler she had received a full price offer for the property. This offer was from appellant Dilonell. Chandler wanted to review the offer, but Anderson told her there was not enough time and they would lose the offer if it was not accepted. Anderson stated she would just sign Chandler's name, and Chandler, due to Anderson's pressure, agreed. On May 14, 2016 Anderson told Chandler to send a voice mail authorizing Anderson to sign Chandler's name. Chandler left the voice mail as directed by Anderson, but believed that she was only authorizing Anderson to start the sale process, and that there was no final agreement. It is undisputed Chandler did not sign any documents, and did not give Anderson written authorization to sign on her behalf.

On May 20, 2016 Anderson told Chandler the deal had gone through. Chandler objected, but Anderson told her she could not get out of the sale. On May 27, 2016, Chandler wrote to Anderson and told her she was canceling the transaction and terminating Anderson as property manager.

---

[1]     The facts related to this transaction are taken from the unpublished opinion in *Dilonell v. Chandler,* case No. B282634. On our own motion, we take judicial notice of that opinion.

Appellant Dilonell then brought an action against Chandler seeking, among other things, to compel arbitration of the dispute over the failed transaction. In February 2017, the trial court found Chandler did not enter into the purchase agreement because she did not give Anderson signed, written authority to sell the property on her behalf. Without a valid purchase agreement, there was no agreement to arbitrate. The court entered a judgment of dismissal in March 2017.[2]

In September 2017, Jackson brought this action, alleging causes of action for quiet title, partition by sale, slander of title, breach of fiduciary duty, unfair business practices, intentional interference with contractual relations and prospective economic advantage, conversion, money had and received, elder financial abuse, intentional infliction of emotional distress and injunctive and declaratory relief. Her stated purpose in filing the partition cause of action was to compel the sale of the property.

In early 2018, Jackson allegedly transferred her interest in the property to appellant Dilonell and assigned to her the right to this action.[3] In June 2018, appellant Dilonell was substituted in

---

[2]	In October 2018, the trial court's ruling was upheld on appeal.

[3]	In its January 25, 2021 order, the trial court used the modifier "allegedly" and noted that according to Chandler, Jackson signed the assignment of rights on February 23, 2018 and died on February 24, 2018. The deed transferring Jackson's interest to Dilonell was recorded on February 26, 2018. In her September 2020 status report, Chandler stated an issue had arisen in the probate of Jackson's estate concerning whether Dilonell was the true owner of the property interest. The record on appeal does not show the current status of the probate proceedings.

4

as plaintiff. It is undisputed appellant wanted to buy Chandler's interest in the property. Appellant had obtained an appraisal of the property at $960,000 and sought to buy Chandler's interest at the appraised value. Chandler brought two motions to have a partition referee appointed to list and sell the property. Chandler was concerned that a sale price based on an appraisal alone would not reflect the property's true value, which she believed to be about $1.5 million.

The trial court denied both motions for a partition referee and instead issued an order for the parties to appoint a neutral broker to list and sell the property. The order stated: "The sale shall be all cash with no seller financing required and no contingencies." The order also provided that after a two-week marketing period, "either party can purchase the property at the listing price without any right of first offer or first refusal. If one of the parties is the successful purchaser, then that person need only close the escrow with one half of the agreed to sales price but all other expenses of the sale shall be paid equally by the parties."

The property was listed in November 2019 for $1.5 million. During the next six months, the highest third party offer was $1 million. Dilonell offered $515,000 "on behalf of the Wood Property [LLC]." The offer was made using a standard California Association of Realtors form for the sale of residential income property. The offer identifies the property as "703 Walnut St, Inglewood, CA 90301-0328" and shows Chandler as the only seller. On appeal, Dilonell describes this as an offer to buy Chandler's 50 percent interest in the property. So understood, this would be the equivalent of offering $1.030 million.

Chandler did not agree to the offer, which she described as "The Wood Property, LLC offer" and based on the agent's recommendation, requested to extend the listing. Dilonell brought an ex parte application to compel the sale of the property to her. The court denied the application and ordered the listing period extended until January 1, 2021 at the price of $1.295 million. The court's August 6, 2020, order required the parties to accept an offer at or above the listing price if the broker indicated "it is a best offer." The order permitted the parties to accept an offer for less than the listing price before January 1, 2021 if both parties agreed the offer was acceptable. The order further provided: "After January 1, 2021, the highest outstanding valid offer shall be accepted."

By the time of the January 19, 2021 status conference, there were two outstanding offers: a third party offer (the Sherriff offer) for $1.050 million and an offer from "Frida Dilonell on behalf of The Wood Property LLC" in the amount of $527,500. The offer was on a standard form for the purchase of residential income property.

On January 25, 2021, following a discussion at the status conference, the trial court issued the following order: "Prior to the final status conference on January 19, 2021, Plaintiff [Dilonell] filed a status conference brief indicating that a third party, Abdul Sherriff, had submitted an offer for $1,050,000 and that Plaintiff had submitted an offer for $1,055,000 '($527,500 for Chandler's 50% interest).' Plaintiff attached a written purchase offer as exhibit 1 for the purchase of 703 Walnut St., Inglewood, CA for the purchase price of $527,500, which was represented to be her purchase offer. The offer lists Suzanne Chandler as the 'seller' in the signature block, but the offer does not indicate

6

anywhere that it is an offer or sale of Defendant's [Chandler's] interest in the property. Instead, as written, it is an offer to purchase the property and with Defendant [Chandler] selling the property, not just her interest. [¶] Accordingly, the court finds that the highest offer existing as of January 1, [2021] was the offer submitted by Mr. Sherriff, and the parties must accept that offer pursuant to the language Plaintiff [Dilonell] asked to be included in the August 6, 2020 order."

On January 26, 2021, the parties appeared before the court and stated that a stipulated settlement had been reached on the remaining accounting issues. Pursuant to this settlement, the court ordered $16,000 of appellant's net proceeds in escrow to be disbursed to Chandler. The court also ordered appellant to sign the third party offer for the property by the end of the month. If appellant failed to comply, Chandler could bring an ex parte application to have the clerk of the court sign the offer.

## DISCUSSION

The parties agree that the standard of review for the trial court's orders is abuse of discretion. We agree as well. (See, e.g., (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597; *Butte Creek Island Ranch v. Crim* (1982) 136 Cal.App.3d 360, 365; [partition cases]; *People v. Stark* (2005) 131 Cal.App.4th 184, 202 [confirmation of receivership sale]; *Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 732 [court's exercise of equitable powers.) Since we review for an abuse of discretion, it matters not whether the trial court could have reached other conclusions in the exercise of its discretion.

7

A.    *The Trial Court Did Not Abuse Its Discretion or Improperly Focus on Technicalities in Finding That the Offer at Issue Was an Offer for the Property.*

Appellant contends the trial court abused its discretion in finding that her purchase offer of $527,500 was an offer to purchase the entire property. Appellant argues the finding is not reasonable in light of the entire record and is not supported by substantial evidence. She characterizes the trial court's ruling as focused on technicalities.

Appellant points out, correctly, that it is undisputed that she and Chandler each owned a 50 percent interest in the property and that Chandler wanted to sell her interest in the property and appellant wanted to buy that interest. She is also correct that her two previous offers took the same form as her last offer, showing Chandler as the only seller and offering a purchase price between $500,000 and $600,000 for the Walnut St. property from appellant on behalf of The Wood Group LLC. According to appellant, Chandler ignored the first offer and stated that she did not consider appellant's second offer to be the highest and best offer, but did not object to the form of the offer.

We cannot agree with appellant that these facts, including listing Chandler as the only seller, made it unnecessary for appellant to specifically state in her offer that she was buying Chandler's 50 percent interest. She argues it was unnecessary because this was the understanding of the parties. Generally speaking, when a written offer is accepted, a contract is formed and the terms of the written offer will control. (See, e.g., *Roth v. Malson* (1998) 67 Cal.App.4th 552, 557 ["Contract formation is governed by objective manifestations, not subjective intent of any individual involved. [Citations.] The test is 'what the outward

8

manifestations of consent would lead a reasonable person to believe.' "].) Thus, it absolutely was necessary for appellant to specifically include the key terms in her written offer, including at a minimum the precise real property or property interest to which the offer applied. The trial court was not being hyper technical when it applied this well-established rule to appellant's offer and found that "*as written*, it is an offer to purchase the property with [Chandler] selling the property, not just her interest." (Italics added.)

The trial court's finding was reasonable and supported by substantial evidence. It is undisputed appellant's written offer states it is for the property at 703 Walnut Street and does not specify that it is for the purchase of Chandler's 50 percent interest only. Appellant's error in failing to specify that she was buying Chandler's interest in the property was compounded by her persistent statement that the offer was from appellant "Frida Dilonell on behalf of The Wood Property, LLC." Perhaps the parties understood why appellant listed herself as the buyer *on behalf of* a corporate entity rather than simply in her individual capacity, but her reasons are not clear from the record on appeal. We do not agree with appellant that the trial court's order shows it accepted her representation that the offer was her personal offer.[4] Although appellant did neglect to check the boxes on the forms that indicated the offer was being made in a representative capacity, she repeatedly described the buyer as being from "Frida Dilonell on behalf of The Wood Property, LLC," a much more intentional action than failing to check a few boxes on a multi-

---

[4] We understand the court as summarizing the claims appellant made in a status conference brief that she had submitted an offer for $1.055 million.

9

page document.  Thus, the $527,500 offer was not from the owner of the other 50 percent interest in the property (appellant) but from a third party, The Wood Property, LLC.  An offer from a third party makes it even more reasonable to understand the offer as being for the entire property.

Appellant points out that when Chandler rejected her two previous offers, she did not find fault with the way they were drafted.  To raise "terminology" issues as to the final offer, according to appellant, is evidence that Chandler acted unreasonably or in bad faith in rejecting the offer.[5]  We do not agree.  It appears undisputed that Chandler did not believe the offers were high enough, and there was no reason to list other, secondary problems about a low offer.  Chandler was demonstrably concerned that appellant was trying to buy her interest at an unfairly low price, perhaps through trickery or deceit.  It is precisely in such a situation of mistrust the parties should dot every "i" and cross every "t."

In addition, although not directly applicable to an offer of less than the listing price, the court's original order stated "either party can purchase the property *at the listing price* without any right of first offer or right of first refusal.  If one of the parties is the successful purchaser, then that person need only close the

---

[5]  Chandler did previously note the substance of the offers.  She had in fact previously referred to offers from Frida Dilonell on behalf of The Wood Property, LLC as being from The Wood Property, LLC.  In opposition to appellant's July 2020 ex parte application for an order forcing a sale to appellant and in support of an order extending the listing, Chandler characterized the offer at issue as "The Wood Property, LLC offer."  She took the offers at their word.

escrow with *one half of the agreed to sales price.*" (Italics added.) Thus, the trial court's original order did not contemplate that a party would offer half the listing price of the property; the order simply permitted a deposit into escrow of half the (full) sales price. While appellant was free to follow another procedure for any offer less than the listing price, she risked confusion in not following the template suggested by the trial court for a listing price offer. She could have, but did not, offer the full purchase price for the property with a condition that she could close escrow with only half of the offer price.

B.     *The Court Did Not Force Sale to a Third Party.*

Appellant contends the trial court abused its discretion because its ruling failed to protect her property rights or to promote fairness and equity. She also contends the court's ruling contravened the strong public policy against forced sales.

The sale of appellant's interest in the property was the relief sought by appellant's predecessor in interest, Jackson, the original plaintiff in this action. Jackson had alleged that a physical division of the property was not feasible and she sought partition of the property by sale. Appellant did not seek leave to amend the complaint to request other relief, such as, for example, the physical division of the property. Thus, a sale was requested by appellant, not forced on her by the court.

Further, once the property was listed for sale, the trial court did not force appellant to sell her 50 percent interest in the Walnut property. It was appellant's carelessness or gamesmanship which resulted in the sale of the entire property to a third party. The trial court had no duty to protect appellant from herself, particularly given that she was represented by counsel.

11

There is no doubt appellant wished to purchase Chandler's interest in the property, and appellant had more than a year to purchase the property and acquire that interest on the open market. Appellant requested the hard deadline in this case in August 2020, after the property had been on the market for nine months. Thus, it was at appellant's request that the trial court made clear that the highest valid offer for the property as of January 1, 2021 would be accepted. If, as appellant suggested *after* the deadline, she offered half the price of the property because she did not want to place the full purchase price of the property into escrow, she could and should have requested that a provision to that effect be added to the August 2020 order, or have later sought an order to that effect from the court before the deadline.[6] There is nothing inequitable or unfair about requiring

---

[6] The settled statement of the status conference hearing shows appellant's counsel argued that "the Court's Order provides that a Party who wishes to buy need only close escrow with 50% of the sales price. Because the Dilonell Offer, when accepted, would become incorporated in the Escrow Instructions for purposes of calculating the amount needed as earnest money and for purposes of closing the sale, it only makes sense that [appellant] Dilonell's Purchase Offer is stated in terms of a 50% offer price as contemplated in the Court Order dated October 2, 2019."

What would actually "make sense," if appellant believed the order controlled all purchase offers by the parties (and not merely the listing price offer specified in the order), would have been for appellant to make an offer for the property itself, as contemplated in that order, and then rely on the order to control the escrow instructions. Instead, appellant implicitly acknowledged that the order did not control when she attempted

12

appellant to obtain a court order permitting her to close escrow with only half the purchase price stated.

C.    *The Trial Court's Ruling Was Not Contrary to Law or Arbitrary.*

Appellant contends that the trial court's interpretation of appellant's offer was inconsistent with the partition statutes, relies on an erroneous interpretation of contract law, and ignores its own order.

1.    Partition statute

Appellant appears to contend that the partition statute only requires an offer to be in writing and timely deposited, and any additional requirements for the offer would be inconsistent with that statute.  (Code Civ. Proc., § 873.680, subd. (b).) Specifically, appellant contends that the trial court's requirement that her offer specify that it is for Chandler's 50 percent interest is inconsistent with the statute and so an abuse of discretion.

The trial court did not require appellant to specify that her offer was for Chandler's 50 percent interest.  The trial court found that appellant's offer as written was for the property itself and not just for Chandler's interest.  Appellant could have framed the offer in any manner she wished as long as she made the substance of her offer clear.  She could have offered $1.055 million for the property itself, or $527,500 for Chandler's 50 percent interest.  The written offer she made did neither. Nothing in the partition statutes excuses a party from making the terms of her offer clear and understandable.

---

to substitute a half price offer for a court order permitting her to provide half the purchase price to close the transaction.

13

Appellant also refers to Code of Civil Procedure section 873.770, which provides that "Where the purchaser is a party or lienholder entitled to a share of the proceeds of sale, the referee may: [¶] (a) Take the purchaser's receipt for so much of the proceeds of sale as belongs to the purchaser." This sale was not conducted by a partition referee. Further, we understand the section as contemplating a sale at the full price for the entire property, but only requiring a "receipt" from the party purchaser for her share. Otherwise the reference to a share of the sales proceeds makes no sense.

Appellant additionally contends that the partition statute requires the court to prioritize the benefits to the parties, which appellant now equates to the highest price. That benefit would have accrued only to Chandler as she was the seller. She did not object to the acceptance of the third party offer. Further, the provisions which appellant relies on apply to a sale by a partition referee. As appellant acknowledges, the court was free to fashion its own sales procedures. In so doing, the court incorporated what reasonably appeared to be the benefits most prioritized by appellant: speed and finality. Appellant requested that the sale process for the property end no later than January 1, 2021 with required acceptance of the highest valid purchase offer. The trial court incorporated this provision into its order.

### 2. Court's order

Appellant contends the trial court ignored its own order which provided: "If one of the parties is the successful purchaser, then that person need only close the escrow with one half of the agreed to sales price but all other expenses of the sale shall be paid equally by the parties." Appellant contends the order does

14

not specifically state that the offer must explicitly state that it is a 50 percent purchase offer.

Appellant has omitted the preceding sentence of the order, which provides that "either party can purchase the property at the listing price without any right of first offer or right of first refusal." The order then specifies how escrow should occur if one of the parties is the successful purchaser. Thus, the order is most reasonably understood as applying only to an offer to purchase at the listing price. If we were to extrapolate from the court's order to other offers, we would find the most reasonable understanding would be that a party who makes an offer for the property need only deposit half the purchase price to close escrow. The trial court's finding that appellant's offer was for the property is not inconsistent with such an extrapolation.

3. <u>Contract law</u>

Appellant contends that an offer only requires five elements to be legally binding, and that the trial court ignored this rule and required more. By appellant's own description, one of those five elements is "the property to be transferred, describing it so it may be identified." This element was in fact the court's focus. The court found that the description of the property in the offer identified the entire property, not just Chandler's interest. This finding did not create an additional requirement; it gave effect to a well-established requirement identified by appellant herself.

15

## DISPOSITION

The trial court's orders are affirmed.  Costs are awarded to respondent Suzanne Chandler.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, Acting P. J.

We concur:


WILEY, J.


HARUTUNIAN, J.[*]

---

[*]      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.