[Civ. No. 18601. Second Dist., Div. Three. Nov. 28, 1951.]

Estate of LEE CANFIELD, Deceased. DOROTHY O. EASTMAN, Respondent, v. JOHN C. KOPASZ, Appellant.

Blanche & Fueller and Montgomery G. Rice for Appellant.

Walker & Horn and Roger W. Young for Respondent.

SHINN, P. J.—Dorothy Eastman, executrix of the estate of Canfield, filed a petition for confirmation of sale of an apartment house. John Kopasz (surviving husband and personal representative of the estate of Marvel I. Canfield Kopasz, deceased, a daughter of Canfield) objected to the sale, contending there was no reason for it, since the estate was ready for final distribution and the estate of Mrs. Kopasz was willing

to take the property in question in partial distribution of the Canfield estate. The court confirmed the sale under Probate Code, section 754, and Kopasz appeals.

Lee Canfield died testate in March, 1948, leaving an estate of approximately $500,000 which consisted of securities, a substantial amount of cash and several parcels of improved and unimproved real estate in Los Angeles and Long Beach. The will left the estate to the surviving spouse, Alice Canfield, and two daughters, Dorothy O. Eastman and Marvel I. Canfield Kopasz. Dorothy Eastman was appointed executrix. During 1948 and 1949 there were disputes among the three heirs involving money claims against the estate, as well as efforts by the widow and Marvel to have the executrix removed. On February 24, 1950, an agreement compromising the removal proceeding and all of the claims was entered into by the three heirs. By this agreement the claims were allowed in part and the remaining estate, after creditors' claims, taxes and administrative expenses, was to be divided one third to each of the parties. Insofar as it concerned claims against the estate the agreement was approved by the court prior to the present proceeding.

In addition to compromising claims, the agreement provided for compromise as to the distributive shares of the parties. At the time the agreement was made the estate was ready for final distribution. The estate consisted of over $70,000 in cash, $95,000 in notes receivable, substantial amounts of stocks and bonds and several parcels of real property including that here involved (which was then appraised at $42,000). The only reason for delaying distribution was that the three beneficiaries did not want to take undivided interests in the real property and it was not considered feasible to distribute any part of it in kind. They attempted to solve this problem by inserting in the agreement a section[1] authorizing the executrix

[1]Insofar as here pertinent the section reads as follows: *"SIXTH* That after the payment of administration expense and Federal estate taxes, and the allowed claims the rest and remainder of the estate will be distributed in the following manner: . . . [one-third to each of the three heirs].

*"Said distribution shall be made* in cash so far as possible, and *in kind if division can be made in severalty and not jointly. . . .*

"The real property now on hand for distribution *is such that the same cannot be allotted or divided in kind,* and therefore it is agreed among the parties that the Executrix shall sell the said real property and furniture in accordance with the provision of Division III, Chapter XIII, Articles 1, 2 and 3 of the Probate Code [secs. 751-64], and the proceeds likewise shall be divided equally between the parties. In connection with said sales, each of the parties shall be apprised of the highest and best

to sell the real property and then distribute cash. It was also provided that any of the parties could take trust notes at their appraised values and that the stocks and bonds should be divided equally as far as that was possible, adjustment for odd amounts to be made in cash. Subsequent to the date of the agreement the property in question was reappraised at $38,500. The executrix offered the property for sale and accepted a bid of Mr. and Mrs. Hancock of $35,000. Immediately upon hearing of the proposed sale, appellant John C. Kopasz, as executor of the estate of Marcel I. Canfield Kopasz, who had died in July, 1950, sent a telegram to the executrix informing her that the estate of Mrs. Kopasz would be willing to take the parcel in partial distribution of the Canfield estate at a valuation of $35,001. On the ground the offer was not to pay cash, the executrix rejected it and petitioned the probate court for approval of the sale to Hancock. Appellant filed timely objection to approval of the sale and also filed a petition for partition before distribution, whereby the Marvel Kopasz estate would get the real property in question at a valuation of $35,001 and the other two heirs would receive a like amount in cash. The sale was approved.

 Sales of estate property may be made by an executrix only as directed in the will or as provided for by statute. (*Haynes* v. *Meeks*, 20 Cal. 288, 312.) The only statutory provisions authorizing approval of such sales are Probate Code, section 754[2] (probate sale), and 1103[3] (sales on petition

bid offered to the Executrix for the said properties, and any of the parties may elect to bid a greater amount than the highest and best offer received, in which event said sales shall be consummated with the party so offering, subject to confirmation by order of the Superior Court.'' [Italics added.]

[2]*Section 754.* ''In selling property to pay debts, legacies, family allowance or expenses, there shall be no priority as between personal and real property. When a sale of property of the estate is necessary for any such purpose, or when it is for the advantage, benefit, and best interests of the estate and those interested therein that any property of the estate be sold, the executor or administrator may sell the same, either at public auction or private sale, using his discretion as to which property to sell first, except as provided by Sections 750 and 751 of this code.

''The executor or administrator in making any such sale may sell the entire interest of the estate in the property or any lesser interest or estate therein.''

[3]*Section 1103.* ''The court shall proceed to take evidence and to partition, allot and divide the property so that each party shall receive property of a value proportionate to his interest in the whole, and for that purpose it may direct the executor or administrator to sell any property which cannot be partitioned without great prejudice to the

for partition under section 1100[4]). The question presented by this appeal is whether the proposed sale would properly be held under section 754 or under section 1103. Respondent contends the former section is proper, appellant the latter.

Under section 754, a sale of estate assets may be made by the executor only where it is to satisfy obligations of the estate or is shown to be for the "advantage" of the estate. In her petition the executrix stated that this sale was necessary in order to "liquidate the estate for distribution." This is not a ground for a probate sale under section 754, nor was it a fact. In confirming the sale the court found that it was to the advantage of the estate to sell the property. This finding is not supported by the evidence, by which it was shown that the only reason for the sale was to dispose of the property in order to distribute cash. Evidence was introduced to show the property was losing value but this was wholly immaterial under the circumstances and not a sufficient reason for a sale when the estate was ready for distribution without the necessity of a sale. (See *Estate of Rawitzer*, 175 Cal. 585, 592 [166 P. 581].) The court erred in treating the petition as one under section 754, and in finding that a sale would be to the advantage of the estate.

The procedure of section 1103 should have been followed. The heirs by their agreement indicated they wanted the property sold to facilitate distribution of the estate.[5] None of them wished to take the property at its then appraised value. The executrix should have proceeded at the request of the heirs to petition the court under section 1100, pursuant to which the court may partition the property or order a sale under section 1103. The grounds for the petition would be that the heirs did not want to hold undivided interests in realty and could not agree among themselves as to a division of the property. In proceeding under section 1103 the court

owners and which cannot conveniently be allotted to any one party. The sale shall be conducted and confirmed in the same manner as other probate sales. Any two or more parties may agree to accept undivided interests."

[4] *Section 1100.* "When two or more heirs, devisees or legatees are entitled to the distribution of undivided interests in any real or personal property of the decedent and they have not agreed among themselves, before distribution, to a partition, allotment or other division thereof, any one or more of them, or the executor or administrator, at the request of any one or more of them, may petition the court to make such partition, allotment or division of the property as will be equitable and will avoid the distribution of undivided interests."

[5] See *supra*, note 1.

is acting as it would in an action for partition or sale of property held under tenancy in common. If the property is such that it can be partitioned without great prejudice to the owners, or can be conveniently allotted to any one party, the court has no authority to order a sale rather than to partition. (Prob. Code, § 1103; *Williams* v. *Wells Fargo Bank & U. Tr. Co.,* 56 Cal.App.2d 645 [133 P.2d 73]; *Faires* v. *Pappmeier,* 104 Cal.App.2d 713 [232 P.2d 41].) The "property," insofar as it is presently involved, consists of real property with a valuation of $35,000 and cash in the sum of at least $70,000. Three tenants in common had an equal interest, so division would be of $35,000 in value to each. If the sale to Hancock were approved the estate would receive $35,000 and each of the heirs would be entitled to distribution of $35,000 in cash. If the order of partition were made according to appellant's offer, the estate of Kopasz would receive its share in cash. It is apparent that the position of Mrs. Eastman and Mrs. Canfield would be identical whether the sale were made *or* the partition and distribution in kind were made as requested by appellant.

It would appear that by its order the court was attempting to give effect to the provision of the agreement for a sale of the property which, at the time of the agreement, none of the heirs was willing to accept at a valuation of $42,000. But whether or not appellant was substantially complying with the agreement, effect should have been given to the mandatory provisions of the statute by granting partition. We think the situation well illustrates the wisdom of requiring partition in kind where it can be accomplished without great prejudice to the owners, and the property can conveniently be allotted to any one party. Appellant evidently regarded the proposed sale as a sacrifice of the property. A clear purpose in placing limitation upon the powers of the court in partition proceedings is to protect owners from deprivation of their property for less than they consider it to be worth.

 The undisputed facts were such as to require the court to deny confirmation of the sale and to grant the petition of appellant.

Included with the real estate for which Hancock and wife offered $35,000 and which the estate of Marvel I. Canfield was willing to accept at a valuation of $35,001, was furniture located on the premises of the value of $100. Our holding applies to the furniture as well as to the real estate.

The order is reversed with directions to deny the petition

of the executrix and to take further proceedings in accordance with the views herein expressed.

Wood (Parker), J., and Vallée, J., concurred.

The judgment and opinion were modified to read as above printed on December 5, 1951, and a petition for a rehearing was denied December 27, 1951.

Respondent's petition for a hearing by the Supreme Court was denied January 24, 1952.