[D006094. Fourth Dist., Div. One. Feb. 17, 1988.]

Estate of EVELYN B. BARTHELMESS, Deceased.
GEORGE C. WETZEL, as Executor, etc., Petitioner and
Respondent, v.
KAYLYN MALLETTE, Objector and Appellant;
KARL BARTHELMESS et al., Claimants and Respondents.

■■■■■■■■
■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■

**COUNSEL**

Eugene J. Gorrow, Higgs, Fletcher & Mack, Vincent E. Whelan and Richard E. Showen for Objector and Appellant.

Ferguson, Newburn & Westson and John Newburn for Claimants and Respondents.

Carl Fabian for Petitioner and Respondent.

**OPINION**

**TODD, J.**—Kaylyn Mallette appeals an order confirming the sale of residential real property upon the petition of George C. Wetzel, executor of the estate of Mallette's deceased mother, Evelyn B. Barthelmess.[1] Mallette seeks to overturn the sale to third party purchasers and to have the residence distributed to herself and her two brothers in kind as tenants in common under the basic distribution provision in Barthelmess's will giving the estate to the three children share and share alike.

Mallette challenges the order confirming the sale on the grounds (1) Probate Code[2] section 582 prohibits a sale after expiration of the period to file claims where the sale is not required to pay debts as was the case here, (2) the evidence does not support the allegations of the petition or the court's finding the sale was for the best interest of the estate, (3) the court abused its discretion by confirming the sale after Mallette overbid the purchaser in the required amounts at the confirmation hearing, and (4) the part of the confirmation order directing that escrow may close 30 days from the date of the order is contrary to law and constitutes reversible error.

Finding no merit in Mallette's contentions, we affirm. However, we do not find the appeal to be frivolous and thus do not impose sanctions as requested by Wetzel, whose brief and sanctions request is joined in by Mallette's brothers, Karl and Kurt Barthelmess.

---

[1] Mallette's notice of appeal is more elaborate than we need to describe, citing a series of orders entered February 4, February 6, March 6, and March 18, 1987, the legal effect of which is confirmation of the sale of real property.

[2] All statutory references are to the Probate Code unless otherwise specified.

FACTS

After Evelyn B. Barthelmess's death July 9, 1986, Wetzel was duly appointed executor, and letters testamentary issued August 7, 1986. Evelyn B. Barthelmess's will contains no powers of the executor, such as the power of sale. Her estate consists of both real and personal property. The real property, Evelyn B. Barthelmess's residence in San Diego, was incapable of being legally divided by a partition in kind. In addition, the estate was of insufficient size to permit distribution of the residence to one beneficiary and division of the remaining assets between the two other beneficiaries in order to effect an equal distribution to each of them as the will required.

On November 18, 1986, Wetzel filed a notice of sale of real property at private sale with respect to the residence. The notice of sale set forth terms of the sale, including that it was to be a cash sale with 10 percent of the amount bid to accompany the offer and the balance to be paid on confirmation of sale by the court. The notice of sale specified that bids or offers must be in writing and would be received at the office of Wetzel's attorney or could be filed with the court clerk or with Wetzel at any time after first publication of the notice and before making the sale.

On December 10, 1986, Wetzel accepted a written bid from third parties conforming to the terms of the notice of sale. The bid was for $175,500, $10,500 more than the appraised value, and was accompanied by a certified check for $17,500. On December 11, 1986, Wetzel petitioned the court for confirmation of the sale and the matter was set for hearing on February 4, 1987.

Before the hearing on the petition to confirm the sale, Mallette filed a petition to declare invalid the private sale and for preliminary distribution, and an objection to the private sale. The petition and the objection, among other things, cite section 582 and seek to invalidate the sale on the basis the sale occurred after the four-month period for filing creditors' claims expired and was not necessary to pay debts of the decedent or expenses of administration. The prayer of the petition, in addition to requesting partial distribution of 85 percent of the securities as well as general relief, asks the court to enter an order:

"1.   Declaring the private sale of real property by the executor held on December 10, 1986 invalid; AND

"2.   Directing the executor to make a preliminary distribution of the assets of the estate to the residuary devisees and legatees at this time, to the following extent:

"a. Deliver possession of all of the real property owned by the estate to the residuary devisees, as tenants-in-common, . . ."

The petition incorporates the objection in which Mallette avers the residence is the "family homestead" and served as her home and principal residence for the eight years immediately preceding her mother's death. Mallette was still living in the residence pursuant to a lease executed before her mother's death and expiring November 30, 1987. Mallette's objection states, in part: "It is my intention to purchase the undivided interests of my brothers in this real property from them at such time as it is distributed to us by the executor from the assets of the estate, with the court's approval, and to continue to reside there with my husband indefinitely and occupy it as my principal and only residence."

In response to Mallette's petition and objection, Wetzel filed declarations of Mallette's brothers, Kurt and Karl Barthelmess, expressing their desire to have the residence sold rather than having it distributed to the three beneficiaries as Mallette's petition requested. The brothers state the reason for this desire is the three beneficiaries reside in different locations throughout the United States and numerous difficulties and conflicts are very likely to arise in maintaining this property as tenants in common.

At the February 4, 1987, hearing on the petition to confirm the sale, the court heard extensive argument before it confirmed the sale and denied Mallette's petition to declare the sale invalid. The court expressly ruled the sale was for the best interests of the estate and the court was not precluded by section 582 from proceeding to confirm the sale. The court said that necessity to pay debts or expenses of the estate was not a controlling factor in its decision.

Also during the hearing, Mallette made an oral bid in the minimum overbid amount of $184,775 cash. As the 10 percent down payment Mallette tendered a portion of her share of the preliminary distribution the court ordered during the hearing. Citing section 785.1,[3] Wetzel indicated the offer was not acceptable. The court denied Mallette's request for a one-day continuance to obtain funds for a cash down payment and confirmed

---

[3] Section 785.1 provides: "(a) If the sale returned for confirmation is upon a credit, a higher offer made to the court pursuant to Section 785, either for cash or upon a credit, whether on the same or different credit terms, shall be considered only if the personal representative informs the court in person or by counsel that the offer is acceptable prior to confirmation of the sale.

"(b) If the sale returned for confirmation is for cash and a higher offer made to the court pursuant to Section 785 is upon a credit, the offer shall be considered only if the personal representative informs the court in person or by counsel that the offer is acceptable prior to confirmation of the sale."

the sale to the third party purchasers for $175,500. Mallette undertook numerous proceedings, all unsuccessful to date, to overturn the confirmation of the sale.

## DISCUSSION

### I

Mallette contends the probate court breached its legal duty and thus committed reversible error when it failed to apply section 582, which prohibits a sale of real property made after the period for filing claims where, as here, the sale was not required to pay debts. The contention is unmeritorious.

Section 582, contained in an article of the Probate Code generally dealing with the powers and duties of personal representatives, provides: "When the time to file or present claims has expired, the executor or administrator must deliver possession of the real property to the heirs or devisees, unless the income therefrom for a longer period or a sale thereof is required for the payment of the debts of the decedent."

Section 581 grants the personal representative the right to possession of all the decedent's real and personal property and, among other things, provides: "After the time to file or present claims has expired [the personal representative] is not entitled to recover the possession of any property of the estate from any heir who has succeeded to the property in his possession, or from any devisee or legatee to whom the property has been devised or bequeathed, or from the assignee of any such heir, devisee or legatee, unless he proves that the same is necessary for the payment of debts or legacies, or of expenses of administration already accrued, or for distribution to some other heir, devisee or legatee entitled thereto."

It is readily apparent that sections 581 and 582 concern the subject of the personal representative's right to possession of the assets of the estate. (See § 300.) The sections establish the existence and duration of the right to possession held by the personal representative. References to the expiration of the claims filing period pertain to the duration of the right to possession, not to the power of the personal representative to effect a sale subject to confirmation of the court. In *Estate of Bazzuro* (1911) 161 Cal. 71, 75 [118 P. 434], the court points out that the predecessor to section 581 "does not purport to limit or affect the power of the court to order a sale; . . ."

Separate provisions authorize and control the sale of estate property. (See §§ 754, 758, 785.) Section 754 provides, in part: "[W]hen it is for the

advantage, benefit, and best interest of the estate and those interested therein that any property of the estate be sold, the executor or administrator may sell the same, either at public auction or private sale, using his discretion as to which property to sell first, except as provided by Sections 750 and 751 of this code."

Concerning Mallette's argument there is no necessity to sell the residence in order to pay debts, that simply is not a relevant consideration in determining the propriety of the sale in this case. The sale may be upheld on the basis of the finding it was in the best interest of the estate within the meaning of section 754, just quoted.

This case is controlled by the principles and holding of *Estate of Da Roza* (1947) 82 Cal.App.2d 550 [186 P.2d 725].  *Da Roza* holds that a sale of real estate, which would otherwise be for the best interests of the estate, could not be defeated on the sole ground that the sale would not be to the advantage or best interest of one heir only who opposes the sale. (*Id*. at p. 554.) *Da Roza* expressly concludes the personal representative was authorized to sell the real property in question at private sale "for the 'advantage, benefit, and best interests of said estate,' regardless of whether there were funds in the estate sufficient with which to pay all debts and expenses of administration." (*Id*. at p. 553.) Funds for those purposes were available in the intestate estate under consideration in *Da Roza*.

*Da Roza* sets forth the rule that the burden is on the contestant to prove the sale was not for the best interests of the estate. (*Ibid*.) Moreover, *Da Roza* states: "The order of a probate court confirming or refusing to confirm the sale of real property, 'for the best interests of the estate,' should be affirmed on appeal if there is substantial evidence to support the order." (82 Cal.App.2d at pp. 553-554.)

In reaching its conclusion, *Da Roza* relies on *Estate of Kay* (1947) 30 Cal.2d 215 [181 P.2d 1], which affirmed an order confirming the sale of real property by a guardian.  *Kay* states the rule that "the determination whether there was sufficient evidence upon which to base the order lies within the discretion of the probate court." (*Id*. at p. 218.) *Da Roza* points out any conflict in the evidence upon the issue of the advantage or best interests of the estate resulting from the sale is within the province of the trial judge to determine, and concludes no abuse of discretion on the part of the probate judge appears and the findings are supported by the evidence. (82 Cal.App.2d at p. 555.)

 Contrary to Mallette's argument, we find the *Da Roza* ruling applicable to this case and uphold the determination of the probate court that the

sale was for the best interest of the estate, notwithstanding the sale proceeds were not necessary to pay debts. The determination was within the court's discretion and supported by the evidence. Mallette's objection to the sale, reduced to its essence, is founded on the premise the sale of the "family homestead" would not be in her own best interest. *Da Roza* makes it clear this is not an acceptable ground for objection. Otherwise, Mallette has not carried her burden of demonstrating the sale is not in the best interest of the estate. Thus, we do not disturb the discretion of the probate court in determining the contrary proposition on the basis of the declarations and argument presented to it.

Mallette's reliance on *Estate of Canfield* (1951) 107 Cal.App.2d 682 [238 P.2d 67], is not well placed. There, unlike this case, the sale sought to be confirmed was for an amount below the appraised value of the property and the objector not only offered to take the parcel in partial distribution at a valuation one dollar above the offered price but also petitioned for a partition on the same basis. Here, Mallette did not petition for a partition under section 1100 et seq., instead arguing that section 582 precludes the sale and citing *Canfield* as showing the only proper alternative procedure would be a partition. In *Canfield*, the estate was ready for distribution without the necessity of a sale. Here, the estate was not ready for distribution. The personal representative in *Canfield* rejected the objector's offer on the ground it was not to pay cash and the probate court approved the sale to the third party.

Overturning the order confirming the sale, *Canfield* observed the finding the sale was to the advantage of the estate was not supported by the evidence, which showed the only reason for the sale was to dispose of the property in order to distribute cash. (107 Cal.App.2d at p. 686.) *Canfield* also said evidence showing the property was losing value did not justify the sale since the estate was ready for distribution without the necessity of a sale. (*Ibid.*) *Canfield* concluded that a partition should have been granted under section 1103, and there was no authority for a sale, since the property was such that it could be partitioned without great prejudice to the owners or could be conveniently allotted to one of the heirs. (*Id.* at pp. 686-687.)

Here, of course, the property cannot be conveniently allotted to any one party since the estate is not of sufficient size to do so. The court here expressly found both that the residence was not property which can be partitioned and that it cannot be conveniently allotted to any one party. Thus, the holding of *Canfield* is inapplicable to this case.

We conclude the order confirming the sale is authorized, within the court's discretion and supported by the evidence.

## II

Mallette contends there was insufficient evidence adduced at the confirmation hearing to support the allegations in the petition for confirmation or the finding of the court that the sale was for the best interest of the estate. To make this argument, Mallette points to the fact that at the confirmation hearing no witnesses were examined as to the necessity for or advantage of a sale, and no oral or documentary evidence not already in the record was introduced. Only the petition to confirm the sale and an amendment to the petition were before the court. Mallette cites the language of section 785 that "the court must examine into the necessity for the sale, or the advantage, benefit and interest of the estate in having the sale made . . . and must examine the return and witnesses in relation to the sale, . . ." Mallette relies on the rule that verified petitions and affidavits may be considered as evidence only in uncontested proceedings. (§§ 329, 1233; *Estate of Wallace* (1977) 74 Cal.App.3d 196, 201 [141 Cal.Rptr. 426]; *Estate of Duncan* (1969) 1 Cal.App.3d 212, 215 [81 Cal.Rptr. 568].) Since this was a contested proceeding, Mallette concludes no evidence supports the court's determination the sale was in the best interests of the estate.

At the hearing Mallette asserted that since Wetzel's response to her verified objection and petition to declare the sale invalid was not verified, Mallette's allegation that the sale is not for the best interest of the estate was required to be taken as true. Mallette cited Code of Civil Procedure section 431.20, relating to uncontroverted material allegations in a complaint or cross-complaint that are to be taken as true. Mallette did not otherwise object to the court's consideration of the declarations of Kurt or Karl or her own declaration or other information referred to during the extended argument. Mallette, of course, relied heavily on her own declaration containing factual material about such things as the "family homestead" in which she then lived.

Under these circumstances involving the absence of a specific objection to the court's consideration of the other materials referred to, and particularly the declarations of Karl and Kurt as well as the inventory and appraisement showing the nature and extent of the estate, there was a waiver of the specific evidentiary objection. (See 3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, § 2018 et seq., p. 1979 et seq.) We note in *Estate of George* (1932) 123 Cal.App. 733, 737 [12 P.2d 86], involving a contested hearing on a petition to confirm a sale, the court specifically permitted consideration of the probate record in the determination of the propriety of the sale. *George* states, in part: "[T]he sole and exclusive power and discretion rests with the executor, subject, of course, to the necessity of showing upon a hearing on the return that the facts support the exercise of

the discretion given. Obviously the only test of the reasonable exercise of this discretion rests in the probate record, including the inventory and appraisement, claims presented and anticipated costs of administration. This record is a part of the court's files, and it would seem a forced construction to require that when an executor returns to the court his proceedings on sale that he reincorporate therein what is already before the court." (*Ibid.*)

Review of the record considered in light of the waiver results in the conclusion there is ample evidence to support the court's determination the sale was in the best interest of the estate. (See *Estate of George, supra,* 123 Cal.App. 733, 737; *Estate of Denlinger* (1950) 98 Cal.App.2d 130, 131-133 [219 P.2d 495]; 3 Witkin, Cal. Evidence, *supra,* § 2033 et seq., p. 1944 et seq.)

## III

■ Mallette contends the court abused its discretion in confirming the sale to the third party purchaser when Mallette overbid those purchasers in the required amount.

The February 4, 1987, hearing included argument at the 9 a.m. and 11 a.m. calls of the calendar and was continued well into the afternoon. After the court stated the matter was submitted for decision and it would deny the objection to the petition for confirmation, the matter of sale of the residence to Mallette was discussed. Eugene J. Gorrow, counsel for Mallette, read a loan officer's letter indicating that subject to verification of financial information, Mallette would qualify for an $80,000 loan. The court and counsel discussed the other assets remaining in the estate, and Mallette stated that partial distribution along with an $80,000 loan would make it possible for her to buy the residence. Wetzel stated the estate's preference not to grant partial distribution since he anticipated full distribution within 60 days. When the court pointed out Mallette wanted to use the partial distribution to make a bid, Wetzel responded: "Mr. Wetzel: I have no problem, if she wants to submit a bid and let us consider it. It is our position, though, we are ready here to have the sale confirmed. It is the executor's position under 785.1 we have a cash sale before the court. We're only interested in receiving cash offers."

Mallette referred to a $180,000 bid she had made and claimed that showed necessity for the sale has been removed. When the court asked Wetzel if necessity for the sale had been removed, he stated: "Mr. Wetzel: I don't believe so, your Honor. I have spoken with both of the male heirs. We have considered the objector's prior offers. We have considered this one. We

feel that the necessity has not been removed. It still remains in the best interests of the estate to proceed with the sale today. Prospective purchasers of this estate are here and ready to proceed. If the objector wants to submit an offer within the parameters of the Probate Code, we can consider that, if we receive a valid offer. However, I think just Mr. Gorrow talking about what may or may not happen is a waste of time." To assist the parties and to benefit the entire estate, the court recessed the matter until 1:30 p.m. so the parties might discuss the matter and reach some reliable figures. When the parties returned to court at 1:30, the following colloquy occurred:

"The Court:   Good afternoon again.

"Mr. Gorrow:   Good afternoon, your Honor.

"Mr. Wetzel:   Good afternoon, your Honor. [¶] Your Honor, during the hour or so recess for lunch Mr. Newburn, myself, Mr. Barthelmess and Mr. Gorrow have met.

"Mr. Gorrow:   I object, your Honor, to any discussion as to what we tried to work out. I don't—

"Mr. Wetzel:   I haven't said anything yet, your Honor.

"The Court:   I don't think he was going to.

"Mr. Wetzel:   We have met and conferred pursuant to the court's decision. It is my view as executor that, pursuant to your previous orders, the sale should go forward.

"Mr. Gorrow:   Your Honor, we're still in the hearing on the petition for invalidation of the sale, . . . ."

There followed extended argument about the legal merits of conducting the sale, Mallette contending no necessity for the sale is present and alternatively if the court finds necessity, the necessity is removed. The court again found the property is incapable of partition, concluded the sale is in the best interest of the estate and in particular in the best interest of those interested in the estate (§ 754), and denied Mallette's petition to declare the sale invalid.

The court proceeded to the matter of taking overbids and Mallette repeated her point about having made a bid of $180,000, larger than the third party purchasers' bid. Wetzel pointed out Mallette's offer was unacceptable because it was not accompanied by any down payment and was a 100

percent credit offer. Mallette said that if her bid was accompanied by an assignment of her share in the estate, part of which amounts to $55,000, "her bid was accompanied by real consideration sufficient to satisfy the requirements of her offer of [$]180,000." The court stated the record does not show an abuse of discretion in Wetzel's failure to accept Mallette's bid.

After Mallette requested the court to order no title conveyed pending appeal, volunteering she thought "anyone bidding would want to know," Mallette orally stated she was making a bid for $184,775 cash, the minimum overbid amount. Wetzel handed Mallette an increased bid form which she said she already signed. Mallette's counsel asked the court to allow the down payment to come from the preliminary distribution and said it would be a cash sale. Wetzel cited section 785.1 making credit overbids on sales returned for consideration in cash subject to acceptance by the personal representative. Wetzel insisted on Mallette fulfilling the requirements of an acceptable bid and the court observed the personal representative had informed the court Mallette's offer was unacceptable under section 785.1, subdivision (b).

Mallette asked for a one-day continuance and Wetzel resisted, pointing out that two months had passed since the publication of the sale. The court denied the continuance and confirmed the sale.

No increased bid in open court form submitted by Mallette is in the record. It is noteworthy that over five months later, as of July 9, 1987, at the hearing on the executor's motion to expunge a lis pendens Mallette had recorded in connection with the probate case, Mallette said she could not "get the rest of the financing because they cannot confirm a loan . . . ."

Mallette's oral bid unaccompanied by the 10 percent deposit did not comport with the conditions of the notice of sale. In addition, the overbid was made conditional on the grant of a continuance in order to obtain the necessary funds. It was within the court's discretion to deny the continuance. (§ 783; *Estate of George, supra,* 123 Cal.App. 733, 741-742.) Perhaps more important, Wetzel did not accept the overbid as was the personal representative's right under section 785.1. Finally, the law is clear that only a written, signed offer can be the basis of a confirmed sale (*Estate of Sampo* (1985) 171 Cal.App.3d 767, 774 [217 Cal.Rptr. 713]), and no such offer from Mallette is in this record.

At oral argument, Mallette presented her proposal for funding a purchase of the property with remarkable clarity. However, as mentioned above, the record reflects Mallette never proffered a written offer to purchase the property. Considerable time was granted to the parties in an effort to

accommodate Mallette in arranging such an acceptable offer. Through no fault of Wetzel, no offer was ever submitted.

We have considered Mallette's creative suggestion concerning partition of the property. At oral argument, Mallette suggests Wetzel should have arranged to finance a probate partition distribution by borrowing at least $50,000 with the real property as security. Wetzel had no obligation to undertake this partition plan. Mallette, in possession of the home in question, could have explored this plan and could have presented this to Wetzel and to the court at the time her objections to sale confirmation were heard. When presented with Wetzel's lawful request for confirmation of the sale to the third party purchasers, the trial court was fully justified in proceeding with the sale, which was clearly in the best interests of the estate and a two-thirds majority of heirs awaiting distribution.

In light of these considerations, there was no abuse of discretion in confirming the sale to the third party purchasers.

## IV

Mallette contends the part of the order of confirmation directing that escrow may close 30 days from the date of the order is contrary to law and constitutes reversible error. Mallette relies on *Estate of Shorr* (1981) 122 Cal.App.3d 775, 779 [176 Cal.Rptr. 158], in which the Court of Appeal held under the contract provision it was considering[4] that the time period set forth in the contract was tolled while an appeal was pending and until remittitur issued.

*Shorr* has nothing to do with the propriety of the escrow provision in the first instance. That is a matter properly within the discretion of the personal representative contracting with the purchaser, subject to the court's exercise of its discretion in confirming the sale. There is no abuse of discretion shown in the 30-day escrow provision involved here.

## V

Wetzel and the brothers request sanctions for a frivolous appeal. Though we have decided against Mallette on the issues raised on appeal, considering such matters as the language of section 582 and the ruling in *Estate of Canfield, supra,* 107 Cal.App.2d 682, we conclude the appeal is

---

[4] The contract between the personal representative and the buyer provided, in part, "[a] sixty (60) day escrow will be opened with [*sic*] five (5) business days of confirmation of sale by the court . . . .'" (*Id.* at p. 778.)

not being prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or indisputably has no merit —in the sense that any reasonable attorney would agree that the appeal is totally and completely without merit. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) In fact, at oral argument Mallette's counsel vigorously and concisely presented theories of reversal which, though not finally persuasive, have required added pause for consideration.[5] Accordingly, we determine the appeal is not frivolous and deny sanctions.

## DISPOSITION

Order affirmed.

Wiener, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied March 14, 1988.

---

[5] To prevent any unwarranted encouragement from this comment, we express our disapproval of Mallette's suggestion at oral argument that the personal representative should be expected to cause the estate to borrow funds using the residence as security in order to facilitate an in-kind distribution of the residence subject to the security interest to her. The personal representative's initial discretion in the matter of the administration including the sale of estate assets should not be burdened with a duty to consider the possibility of borrowing in cases of this sort where a beneficiary desires property in kind but cannot comply with the properly noticed conditions of sale. At a minimum, the beneficiary should be required to make a timely and realistic borrowing proposal. No such proposal was made here. We observe that variable conditions of the money and real estate markets create sufficient practical and legal risks to make any borrowing by an estate a generally undesirable choice, particularly when its primary purpose is to accommodate one of several beneficiaries and it is not particularly to the advantage of the estate. (See generally 3 Cal. Decedent Estate Practice (Cont.Ed.Bar 1987) Borrowing Money, § 31.1 et seq., p. 31-2 et seq.)