Filed 7/19/17

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GAYLE S. CUMMINGS,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JENNIFER DESSEL et al.,<br><br>        Defendants and Appellants. | A144212<br><br>(Humboldt County<br>Super. Ct. No. DR110625) |

Defendants Jennifer Dessel and her daughter, Emily Seal, were half-owners of an investment property; plaintiff Gayle S. Cummings owned the other half. After disputes arose, Cummings sued seeking partition of the property. Following a bench trial, and over the objection of Dessel and Seal, the court ordered partition of the property by the appraisal method—that is, each half-owner could bid to purchase the other half-owner's interest, with the minimum bid set by appraisal. Dessel and Seal appealed.

In the published portion of the opinion, we conclude the trial court erred when it ordered partition of the property by appraisal because the parties had not agreed to that method, as is required by the statute. In the unpublished portion of the opinion, we conclude defendants have not shown the error was prejudicial. We also reject defendants' contention that the court abused its discretion in denying their request to continue the trial. Accordingly, we shall affirm the judgment.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of sections II(A)2.(b), II(B), and II(C).

1

# I.     BACKGROUND

## A.  The Property

In 2009, Dessel, Seal, and Cummings agreed to together purchase a parcel of land containing a relatively small and dilapidated residence with a carport.  The parcel was located at 3950 Fieldbrook Road, in Fieldbrook, California (the property), and the parties' plan was to remodel the residence, converting it to a vacation rental.  The parties agreed to pay the seller $200,000.  Cummings made a down payment of $80,000, and the seller agreed to carry a note for the balance of $120,000, to be due in full in June 2015.  The parties committed to make monthly interest-only payments to the seller of about $700, and to pay all insurance and property taxes.

Dessel, Seal, and Cummings signed a promissory note (the agreement), providing that Dessel and Seal would match Cummings's initial $80,000 investment by making the monthly payments on the seller's note, paying all insurance and property taxes, and contributing labor and materials to renovate the property.  Once Dessel and Seal had contributed $80,000 through these methods, the parties agreed, the three would share "enjoyment[]" of the property and related "liabilities" and "responsibilities," allocated in two equal shares, with one (50 percent) share for Cummings, and the other (50 percent) share to be divided equally between Dessel and Seal.

After the parties signed the agreement, a dispute arose regarding the grant deed the seller had signed.  The deed was recorded on June 26, 2009, and gave each party an equal one-third interest in the property, listing them as joint tenants.  Seal later argued the agreement had been to share any profits 50-50, but to divide ownership into equal one-third shares.  Cummings disputed this point, maintaining the agreement had been to allocate ownership in two equal shares, with one 50-percent share for her and the other 50-percent share divided equally between Dessel and Seal.  Cummings subsequently recorded quitclaim deeds, which reflected the latter division, and described the parties as tenants in common.

With this exception, the partnership initially proceeded as planned. Dessel and Seal made payments as agreed and commenced work on the property. During the course of about a year, they gutted the residence, leaving it a shell. At that point, Dessel and Seal stopped work on the property. Then, in late November or early December 2010, they told Cummings they could no longer make their monthly payments. The parties' relationship deteriorated. Eventually, Cummings took over the monthly payments and payment of the property taxes to protect her investment.

### B. Procedural History

In August 2011, Cummings filed suit against Dessel and Seal, alleging causes of action, among other things, for quiet title to establish her 50 percent ownership interest in the property and for partition. Dessel and Seal filed a cross-complaint, alleging several causes of action—for breach of contract, breach of an implied covenant of good faith and fair dealing, nuisance, fraud, and injunctive relief—essentially contending the court should enforce the parties' agreement.

The bench trial of this matter was continued several times. Eventually, it was scheduled to commence on November 3, 2014. Two weeks before that date, on October 21, 2014, Dessel and Seal, representing themselves, filed a motion to continue the trial to an indefinite date in "the first part of 2015." They explained they had not yet raised the funds to retain counsel, they were grieving the sudden death of a close family friend whose funeral might be scheduled for a date during the trial, and they might need to travel to visit Dessel's father, and Seal's grandfather (Grandfather), who recently had been hospitalized, and was reported to be in rapidly declining health. Cummings opposed the request, pointing out that the trial date had been continued several times previously, including once almost a year earlier, after the attorney then representing Dessel and Seal had withdrawn. Cummings observed the long delay left her alone responsible for meeting payments on the note, even though Seal was the person then actually residing on the property. The court issued an order denying the motion, but

3

continuing the trial to November 6 for reasons of court necessity. In the order, the court stated an intent to take a one-day recess on November 8, to allow Dessel and Seal to attend the funeral of the family friend, if it was scheduled for that date. When the parties, thereafter, appeared for trial on November 6, 2014, the court ordered a further continuance until December 1, 2014, due to its own unavailability.

On December 1, Cummings appeared for trial with her counsel, and Seal appeared representing herself. Dessel did not appear. Although no court reporter was present on that date, and the record, therefore, includes no transcript of the proceedings,[1] other documents included in the record indicate that Seal told the trial court Dessel was ill—without providing any supporting documentation—and requested a further continuance, which the court denied. The bench trial then commenced and continued for five days.[2]

After the parties completed their presentation of evidence, the trial judge stated his intended findings, which he later confirmed in an interlocutory judgment filed on January 6, 2015. The interlocutory judgment granted Cummings's quiet title cause of action, determining that Cummings owned 50 percent of the property, Dessel and Seal each owned 25 percent, and the parties held the property as tenants in common. Additionally, concluding partition was an appropriate remedy, the interlocutory judgment specified a procedure by which the parties could bid against each other to purchase the property, and set $125,000 as the minimum bid, "based upon the testimony of

---

[1] It appears neither party had requested a court reporter in advance of trial. (See Code Civ. Proc., § 269, subd. (a)(1) [court reporters are available in civil cases on a party's request]; Super. Ct. Humboldt County, Local Rules, rule 1.7.3 ["To ensure the presence of a court reporter for the first day of a proceeding lasting more than one hour, one or more of the parties must, at least five court days prior to the date . . . , file a written statement requesting a court reporter's presence . . . and pay their pro rata share of the one-half day fee"].)

[2] Dessel made no appearance at the trial. A court reporter, however, did attend for the final three days of the trial.

4

[Cummings's] expert witness Matthew Babich."[3] Finding that Cummings, by then, had invested a total of $124,353.51 in the property, including her original down payment, while Dessel and Seal had invested $39,588.36, the trial court ruled Cummings was entitled to a credit in the bidding process equal to the amount of the difference ($84,765.15). The successful bidder was to assume all existing obligations under the parties' agreement and the seller's note. If no party took title to the property, the interlocutory judgment directed, it was to be listed and sold to the public at whatever value bidders offered.[4]

Pursuant to the procedure specified in the interlocutory judgment, on January 30, 2015, Cummings submitted the minimum bid for the property ($125,000). Dessel and Seal did not submit bids. Under the interlocutory judgment, this meant Cummings was awarded full ownership of the property. Because she had an outstanding credit of $84,765.15, and would assume sole responsibility for completing payment on the seller's outstanding note ($120,000), the interlocutory judgment allowed Cummings to buy the property from Dessel and Seal without paying any additional money. On May 8, 2015, the trial court filed an amended judgment confirming completion of the sale and Cummings's status as sole owner of the property. The amended judgment awarded Cummings her attorney fees and costs. This timely appeal followed.

---

[3] Although the court minutes reflect Babich testified during the second day of trial, when no court reporter was present, in stating the court's intended findings, the trial court judge summarized Babich's testimony as valuing the property at between $100,000 and $150,000.

[4] The trial court rejected the claims Dessel and Seal had presented in their cross-complaint without discussion, and Dessel and Seal did not take issue with that ruling in their opening appellate brief.

## II.    DISCUSSION

### A. Partition

#### 1. Legal principles and standard of review

"A co-owner of real or personal property may bring an action for partition. (Code Civ. Proc., § 872.210.)  'The primary purpose of a partition suit is . . . to partition the property, that is, to sever the unity of possession.  [Citations.]'  [Citation.])" (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493; see also *14859 Moorpark Homeowner's Ass'n v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1404-1405 [" 'partition' " is " 'the procedure for segregating and terminating common interests in the same parcel of property' "].)  " 'Partition is a remedy much favored by the law.  The original purpose of partition was to permit cotenants to avoid the inconvenience and dissension arising from sharing joint possession of land.  An additional reason to favor partition is the policy of facilitating transmission of title, thereby avoiding unreasonable restraints on the use and enjoyment of property.'  [Citation]." (*LEG Investments*, *supra*, at p. 493.)  "[A]lthough the action of partition is of statutory origin in this state, it is nonetheless an equitable proceeding." (*Elbert, Ltd. v. Federated Income Properties* (1953) 120 Cal.App.2d 194, 200; see Code Civ. Proc.,[5] § 872.140.)

"If the court finds that the plaintiff is entitled to partition, it shall make an interlocutory judgment that determines the interests of the parties in the property and orders the partition of the property and, unless it is to be later determined, the manner of partition." (§ 872.720, subd. (a).)  The manner of partition may be "in kind"—i.e., physical division of the property (see, e.g., *Butte Creek Island Ranch v. Crim* (1982) 136 Cal.App.3d 360, 365 (*Butte Creek*))—according to the parties' interests as determined in the interlocutory judgment.  (§ 872.810; see § 873.210 et seq.)  Alternatively, if the parties agree or the court concludes it " would be more equitable,"

---

[5]  All undesignated statutory references below are to the Code of Civil Procedure.

6

the court may order the property sold and the proceeds divided among the parties. (§ 872.820; see § 873.510 et seq.) The third option, "[w]hen the interests of all parties are undisputed or have been adjudicated," and the parties agree (§ 873.910), is partition by appraisal. (See § 873.910 et seq.)

"As a rule, the law favors [the first option,] partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will." (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 757; see §§ 872.810, 872.820.) "The presumption is that land held in common tenancy can be equitably divided between the parties by allowing each a tract in severalty, equal to his interest in the whole, measured by value. [Citation.]" (*Richmond*, *supra*, at p. 757.) " '[I]n many modern transactions, [however,] sale of the property is preferable to physical division since the value of the divided parcels frequently will not equal the value of the whole parcel before division. Moreover, physical division may be impossible due to zoning restrictions or may be highly impractical . . . .' " (*Butte Creek*, *supra*, 136 Cal.App.3d at p. 365.)

The standard of review for an interlocutory judgment of partition is abuse of discretion. (See, e.g., *Butte Creek*, *supra*, 136 Cal.App.3d at p. 369; see also *Lin v. Jeng* (2012) 203 Cal.App.4th 1008, 1025 ["When a trial court makes a ruling based upon equitable considerations, the abuse of discretion standard applies on review of that ruling"].) Under that standard, "[t]he trial court's 'application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.]" (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) "[A] disposition that rests on an error of law [also] constitutes an abuse of discretion. [Citation.]" (*Ibid*.)

### 2. *Analysis*

#### a. Partition method

Here, concluding physical partition, or partition in kind, was not feasible, the trial court prescribed a partition procedure that potentially included two separate stages,

7

effectively combining partition by appraisal and partition by sale as successive alternatives. In the first stage, the parties could bid against each other to purchase the property and take title independently, with the minimum bid specified as $125,000, based upon the appraisal of Cummings's expert Babich. If no party submitted a bid matching or exceeding the minimum amount, the property was to be listed and sold to the public at whatever value could be obtained. Dessel and Seal contend this procedure did not meet the requirements for either partition by appraisal or partition by sale and the trial court, therefore, erred in adopting it. We agree.

The first stage of the procedure amounted to partition by appraisal. Under this alternative, one or more parties may acquire the interests of other co-owners in a piece of property at the appraised value of those interests. (§ 873.910 et seq.; see also, e.g., 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 82, p. 130; Recommendation Relating to Partition of Real and Personal Property (Jan. 1975) 13 Cal. Law Revision Com. Rep. (1975) p. 414.) The California Law Revision Commission, in 1975, recommended the legislation that created this alternative, along with other statutory changes intended to "reorganize[], revise[], and modernize[]" the partition statute. (Recommendation Relating to Partition of Real and Personal Property, *supra*, 13 Cal. Law Revision Com. Rep. at p. 411.) Although there is no case law interpreting the statutes authorizing partition by appraisal, the Commission's 1975 report explained they were intended to address situations "where physical division [would be] inequitable or impossible, and sale [would] result in an unwanted tax liability or in loss of property which one of the owners desire[d] to keep." (*Id*. at p. 414.) Partition by appraisal, the Commission advised, would "be an expeditious and effective means of terminating the differences among the coowners, while at the same time allowing one to retain the property without the expenses of sale and without the imposition of undesired tax liability." (*Ibid*.; see, e.g., *DP Pham LLC v. Cheadle* (2016) 246 Cal.App.4th 653, 670, fn. 7 [" ' "Explanatory comments by a law revision commission are persuasive evidence

8

of the intent of the Legislature in subsequently enacting its recommendations into law" ' "].)

The unambiguous language of the partition by appraisal statutory provisions, however, requires an agreement among the parties. Section 873.910—the first section of chapter 7 of title 10.5, which describes partition by appraisal—states, "[w]hen the interests of all parties are undisputed or have been adjudicated, *the parties may agree* upon a partition by appraisal pursuant to this chapter." (Italics added.) Section 873.920—the next section of the chapter—directs, "*[t]he agreement shall be in writing filed with the clerk of court . . . .*"[6] (Italics added.) Here, however, as Cummings acknowledges on appeal, there was no agreement among the parties, written or otherwise, to partition the property by appraisal. The trial court, therefore, erred as a matter of law in adopting a procedure that commenced with a partition-by-appraisal bidding stage.

Cummings attempts to avoid this result by characterizing the trial court's prescribed procedure as directing partition by a private sale, and not partition by appraisal. But the procedure specified in the interlocutory judgment did not meet the statutory requirements for a private sale. Under section 872.820, a trial court may compel the sale of a property, and division of the proceeds among the parties, without the parties' agreement, if it determines this "would be more equitable than division of the property." In such circumstances, the court may order the property "sold at public

---

[6] Section 873.920 provides in full as follows: "The agreement shall be in writing filed with the clerk of court and shall include: [¶] (a) A description of the property. [¶] (b) The names of the parties and their interests. [¶] (c) The names of the parties who are willing to acquire the interests. [¶] (d) The name or names of a person or persons to whose appointment as referee or referees the parties consent. [¶] (e) The date or dates as of which the interests to be acquired are to be appraised. [¶] (f) Other terms mutually agreed upon which may include, but are not limited to, provisions relating to abandonment of the action if the appraised value of the interest to be acquired exceeds a stated amount, required deposits on account of purchase price, terms of any credit, title and objections to title, and payment of the expenses of the procedure authorized by this chapter and of costs of the action."

9

auction or private sale," depending on which will be "more beneficial to the parties." (§ 873.520.) In doing so, the court may "prescribe such manner, terms, and conditions of sale *not inconsistent with the provisions of this chapter* as it deems proper for the particular property or sale." (§ 873.610, italics added.)

One provision of the referenced chapter—chapter 6 of title 10.5 (§ 873.510 et seq.)—directs that "[n]otice of the sale . . . shall be given in the manner required for notice of sale of like property upon execution." (§ 873.640, subd. (a).)[7] The plain language of this provision contains no exception for private sales. The requirements for notice of sale of an interest in real property upon execution are stated in section 701.540, and include public notice. Among other things, section 701.540 directs that notice of the sale must be posted both on the property to be sold and in one public place in the city or county where the sale is to occur, and requires that notice also be published once a week for three successive weeks in a local newspaper of general circulation. (§ 701.540, subds. (d)(1), (g);[8] see also Gov. Code, § 6063.[9])

---

[7] Section 873.640 provides in pertinent part as follows: "(a) Notice of the sale of real or personal property shall be given in the manner required for notice of sale of like property upon execution. Such notice shall also be given to every party who has appeared in the action and to such other interested persons as may have in writing requested the referee for special notice. [¶] (b) Where real and personal property are to be sold as a unit, notice of the sale may be in the manner required for notice of sale of real property alone. [¶] (c) The court may order such additional notice as it deems proper. . . ."

[8] Section 701.540 provides in pertinent part as follows: "(a) Notice of sale of an interest in real property shall be in writing, shall state the date, time, and place of sale, shall describe the interest to be sold, and shall give a legal description of the real property and its street address or other common designation, if any. . . . [¶] (b) Not less than 20 days before the date of sale, notice of sale of an interest in real property shall be served, mailed, and posted . . . as provided in subdivisions (c), (d), (e), and (f). [¶] (c) Notice of sale shall be served on the judgment debtor. Service shall be made personally or by mail. (d) Notice of sale shall be posted in the following places: [¶] (1) One public place in the city in which the interest in the real property is to be sold if it is to be sold in a city or, if not to be sold in a city, one public place in the county in which the interest in the real property is to be sold. [¶] (2) A conspicuous place on the real property. [¶] . . . . [¶]

10

The partition statutes further direct that "[t]he court shall prescribe the contents of the notice of sale, which shall include a description of the property, the time and place of sale, and a statement of the principal terms of sale." (§ 873.650, subd. (a).) A notice of private sale must also "state a place where bids or offers will be received and a day on or after which the sale will be made." (§ 873.650, subd. (b).) A private sale may not be completed "before the day specified in the notice of sale but shall be made within one year thereafter." (§ 873.680, subd. (a).) The bids or offers for a private sale "shall be in writing and left at the place designated in the notice at any time after the first publication or, if none, the posting of the notice." (§ 873.680, subd. (b).) Only three categories of people are identified as being ineligible to purchase property in a partition sale, namely, a referee appointed by a court to divide or sell the property (see § 873.010, subd. (a)), a party's attorney, and a party's guardian or conservator unless for the party's benefit. (§ 873.690.)

Viewing the statutory framework as a whole, it is evident the intent was to ensure that members of the public receive notice and have an opportunity to bid on property during a partition sale, whether a sale at public auction or a private sale. (See, e.g., *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 [In interpreting a

---

(g) Notice of sale shall be published pursuant to Section 6063 of the Government Code, with the first publication at least 20 days prior to the time of sale, in a newspaper of general circulation published in the city in which the real property or a part thereof is situated if any part thereof is situated in a city or, if not, in a newspaper of general circulation published in the public notice district in which the real property or a part thereof is situated. If no newspaper of general circulation is published in the city or public notice district, notice of sale shall be published in a newspaper of general circulation in the county in which the real property or a part thereof is situated."

[9] Government Code section 6063 provides as follows: "Publication of notice pursuant to this section shall be once a week for three successive weeks. Three publications in a newspaper regularly published once a week or oftener, with at least five days intervening between the respective publication dates not counting such publication dates, are sufficient. The period of notice commences upon the first day of publication and terminates at the end of the twenty-first day, including therein the first day."

11

statute, we examine the language "in the context of the statutory framework as a whole in order to determine its scope and purpose"].)  This is logical because, by maximizing the pool of potential bidders, one might reasonably hope to secure a higher sales price.

The word "private," as used in the term "private sale" in the partition statutes apparently refers to the *bidding procedure*—i.e., written bids submitted at a designated location (§ 873.680, subd. (b)), to be reviewed by the referee conducting the sale (see §§ 873.010, subd. (a), 873.710), presumably in a setting that is private, as compared to a public auction.  Indeed, to construe the term "private sale" as restricting the bidders only to the co-tenants of the property, would be inconsistent with the provisions of chapter 6 (§ 873.510 et seq.) and, in particular section 873.690, which, by clear implication, includes the public at large as bidders.  (See, e.g., *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 159 [" 'Generally, the expression of some things in a statute implies the exclusion of others not expressed' "].)  Interpreting the statutes describing partition by private sale as limiting potential bidders to the parties in the individual case also would make the transaction effectively identical to a partition by appraisal, and would render meaningless the limitation that partition by appraisal may occur only where the parties have agreed in writing.  (§ 873.910; see, e.g., *Donorovich-Odonnell v. Harris* (2015) 241 Cal.App.4th 1118, 1133 [" ' " ' "An interpretation that renders related [statutory] provisions nugatory must be avoided . . . ." ' " ' "].)  Accordingly, we reject Cummings's suggestion that we interpret the term in that manner.

The trial court's partition procedure also did not comply with the requirements governing partition by sale of the property, because it did not direct the public posting or publication of notice regarding the sale.  The interlocutory judgment only directed Cummings's counsel to notify "*the parties* . . . of the date, time, and location of the bidding."  (Italics added.)  As a result, the only notifications were the letters that Cummings's counsel sent Dessel and Seal, giving them the information for submission of any bids and notifying them afterward about Cummings's successful bid.

12

In sum, we conclude the trial court erred because the procedure it ordered did not comply with the statutory requirements for partition by appraisal or for partition by sale.[10] We shall, nonetheless, affirm the judgment because the error was not prejudicial, as it did not affect the result.

### b. Harmless error

Error alone does not warrant reversal. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) " 'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result.' [Citation.] ' "The burden is on the appellant, not alone to show error, but to show injury from the error." ' [Citation.] 'Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record.' [Citation.] 'Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal.' [Citation.] A miscarriage of justice is not found 'unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.' [Citation.]" (*Id.* at pp. 822-823.) " 'A reasonable probability for these purposes does not mean an *absolute* probability; the likelihood that the error affected the outcome need not be greater than the likelihood that it did not. [Citation.] The test is satisfied, and prejudice appears, if the case presents "an equal balance of reasonable probabilities." [Citation.]' [Citation.]" (*Sabato v. Brooks* (2015) 242 Cal.App.4th 715, 725.)

Dessel and Seal have not affirmatively demonstrated a reasonable probability of a more favorable result absent the error. In their opening brief, they attempt to meet this burden by pointing to a single page of the trial transcript. It contains Seal's assertion, in her closing argument, that a nearby property "sold in June [six months earlier] for

---

[10]  Because this error is legal in nature, involving the propriety of the remedy adopted, we reject Cummings's argument that the appeal must be denied for failure to provide an adequate record.

$400,000 fixed up."  Although " 'argument is not evidence[]' " (*Eller Media Co. v. Community Redevelopment Agency* (2003) 108 Cal.App.4th 25, 38), Dessel and Seal suggest that, because Seal represented herself at the time, had been allowed to testify in a narrative manner, and remained under oath, we should consider her statement in closing argument as testimony, offering an opinion as an owner about the value of the property.

It is true that "an owner *is* perfectly competent to testify as to the value of . . . her own property." (*In re Marriage of Stoll* (1998) 63 Cal.App.4th 837, 843; see also Evid. Code, § 813, subd. (a)(2) [The value of property may be shown by the opinion of the owner].)  Even if we were to consider Seal's statement as testimony, and to infer she was offering an opinion about the value of the property here in dispute—albeit testimony that was not tested through cross-examination, was uncorroborated, and was unsupported by accompanying detail, e.g., about the nature, size, or condition of the "fixed up" property—the opinion concerned the price that might be paid at some unspecified date in the future, after the property here in question had been refurbished.  Seal urged the court to direct Cummings to pay her and Dessel half the price of a "*finished property*," and then noted "a property . . . very close to [theirs] . . . just recently sold in June for $400,000 *fixed up*."  (Italics added.)  Seal's untested and unsupported opinion about the possible future value of the property after being "fixed up" did not establish a reasonable probability someone other than Cummings would have paid more than $125,000 for it at the time of the trial, when the structure located on it remained a gutted shell.[11]  Moreover, Seal herself acknowledged that market conditions at that time were far from ideal.  According to the trial judge, Cummings's expert Babich set the property's value at between $100,000 and $150,000.  In her closing argument, Seal remarked that Cummings

---

[11]  In their reply brief, Dessel and Seal also cite Michael Reiman's testimony as providing an alternative valuation of the property.  But Reiman, general manager of a local vacation rental business, only testified about the property's potential future rental income ($43,050 annually) once renovations were completed.

14

seemed excited about partition; Seal suggested, "Perhaps [it was] because an unfinished property devalued so on today's market might be brought [sic] up . . . at a very cheap bargain, [for] next to nothing, really." Based on all of the above, we reach the ineluctable conclusion plaintiff has failed to show that a partition by sale would have netted any greater sum than the appraisal.

Dessel and Seal also appear to contend, in an undeveloped argument, that the trial court's failure to order a sale allowing the public to bid on the property was prejudicial per se, requiring automatic reversal without a showing of injury, because it violated their "substantial right[s]." They cite no authority supporting their characterization of the error, however, nor any authority discussing the circumstances in which automatic reversal is required. Automatic reversal is appropriate where there is a structural error " ' "affecting the framework within which the trial proceeds, . . ." ' [Citation.]" (*Diamond v. Reshko* (2015) 239 Cal.App.4th 828, 849.) " 'In the civil context, structural error typically occurs when the trial court violates a party's right to due process by denying the party a fair hearing,' " for example, by " 'denying a party's request for a jury trial [citation] [or] violating a party's right to present testimony and evidence [citation].' [Citation.]" (*Aulisio v. Bancroft* (2014) 230 Cal.App.4th 1516, 1527 [finding the trial court there committed structural error by effectively precluding one party from participating in the trial].) The cursory argument Dessel and Seal submit on this point, supported by only one citation to a case that is not on point, does not convince us the trial court's error in the procedure it specified for the partition sale qualified as, or even approached, the level of a structural defect.

### B. Motion to continue the trial date

Dessel and Seal also assert the judgment must be reversed because the trial court abused its discretion, denying them a fair hearing, when it refused their motions to continue the trial date.

15

"To ensure the prompt disposition of civil cases, the dates assigned for a trial are firm. All parties and their counsel must regard the date set for trial as certain." (Cal. Rules of Court, rule 3.1332(a).)[12] "Trial continuances are disfavored and may be granted only on an affirmative showing of good cause. [Citations.]" (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1127.) A party seeking a continuance must make the request by a noticed motion or an ex parte application, with supporting declarations, "as soon as reasonably practical once the necessity for the continuance is discovered." (Rule 3.1332(b).) Although a party's unavailability due to "illness" or "other excusable circumstances" may constitute good cause for a continuance (rule 3.1332(c)(2)), a trial court generally has "broad discretion in deciding whether to grant a request for a continuance" (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527), and its decision will not be disturbed on appeal absent a clear showing of abuse of discretion. (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.)

Dessel and Seal have not made such a showing. When they moved to continue the trial date, from November 3 to "the first part of 2015," the case had been pending for more than three years, and Cummings opposed their request, observing the trial date previously had been continued three times. The various grounds that Dessel and Seal stated in their motion—inadequate funds to retain trial counsel, grief over the recent death of a close family friend, the possibility the friend's funeral might be set for a day they were in trial, and Grandfather's hospitalization and poor health—did not compel an exercise of discretion delaying the trial date. In a civil case, parties may act as their own attorneys, and Dessel and Seal did not provide firm information indicating they would be unavailable on November 3. (See rule 3.1332(c)(2) [Although disfavored, continuance of a trial date may be granted if, for example, a party is "unavailab[le] . . . because of death, illness, or other excusable circumstances"].) Nor have they shown any prejudice

---

[12] All further references to rules below are to the California Rules of Court.

16

resulting from the denial of that motion. The trial court offered a one day recess if necessary to allow their attendance at the family friend's funeral, and then continued the trial date on its own motion, due to the court's own unavailability, until December 1, allowing Dessel and Seal almost a month to visit with Grandfather. (See, e.g., *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1141 [An appellant must demonstrate prejudice from the trial court's denial of a request to continue the trial].)

On the new trial date, December 1, Cummings and Seal appeared for trial, but Dessel did not. There is no indication Seal or Dessel submitted any advance request for a further continuance. (See rule 3.1332(b).) It appears Seal simply made an oral request on the morning of the first day of trial, advising that Dessel was ill, without supplying any documentary evidence.[13] Although we do not have a transcript of the proceedings on that date, the court minutes reflect Seal's motion was denied and the trial then commenced. Dessel and Seal contend the trial court abused its discretion in denying the request, depriving them of a fair hearing on their counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. They submit Dessel's testimony was necessary to support those claims because she negotiated the agreement upon which they were based. But, following the first day of trial, the parties' presentation of evidence continued for several days. Dessel and Seal cite no evidence indicating they attempted to corroborate the nature or severity of Dessel's illness, or otherwise support that she was physically unable to attend the trial. (Rule 3.1332(c)(2).) Dessel did not appear in court personally or submit a declaration, although she and Seal provided multiple declarations to support their earlier request for a continuance. Nor was any documentation submitted from a physician. Given this, and considering both the history and posture of the case, and the fact Cummings, by then, had been making all

---

[13] In their reply brief on appeal, Dessel and Seal belatedly submit that Dessel "was fighting" a "chest cold" at the time of trial, which "had settled in her lungs."

17

monthly payments on the seller's note for four years unassisted, we cannot say the trial court abused its discretion in denying a further continuance.

Dessel and Seal cite *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, as support for their position that the decision constituted reversible error. But the facts there were different. In *Oliveros*, "[d]ue to a series of circumstances beyond his immediate control, [a party's] lawyer found himself engaged in trial in another courtroom on . . . the trial date in [that] case." (*Id.* at p. 1400.) "The judge in the [second] case declined to continue it in the face of the conflicting trial dates because the case in her courtroom was the older of the two." (*Id*. at pp. 1396-1397.) The case that gave rise to the decision "was a complicated medical malpractice case in which the parties intended to present the testimony of 43 witnesses, 18 of whom were designated as experts, and in which substantial damages were at stake. [The lawyer] had invested over 250 hours in preparing [the] case for trial. [He] represented to the court that none of the lawyers in his office who had sufficient litigation experience to try [the] case were available to do so on the date set for trial, and detailed the matters in which they were engaged to the exclusion of [that] case." (*Id*. at p. 1397.) Although acknowledging that a trial judge "must have discretion to deny a request for a continuance when there is no good cause for granting one" (*id.* at p. 1396), the Court of Appeal concluded it had been reversible error to deny a continuance there, particularly as the judge's reported comments suggested his only consideration had been "the impact of a continuance on the court's calendar." (*Id*. at p. 1399 [while a valid factor to consider, the impact a continuance may have on a court's calendar cannot be the only consideration].)

Here there was no comparable showing of good cause. We also have no transcript recording the trial judge's remarks in ruling on Seal's last minute motion and, therefore, no evidence the trial court did not properly weigh the factors and circumstances presented. (See, e.g., *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935 ["Failure to

18

provide an adequate record on an issue requires that the issue be resolved against appellant"].) Accordingly, we cannot find the trial court abused its discretion.[14]

### C. Attorney Fees

Cummings submits she should be awarded her attorney fees on appeal as a sanction because the appeal was frivolous. Such a request, however, must be made by a separate noticed motion for sanctions. (See rules 8.276(a)(3), 8.54.) Cummings did not comply with this requirement and we, therefore, deny the request. (See, e.g., *City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 468.)

Cummings also makes a cursory argument that she is entitled to half her reasonable attorney fees on appeal because she incurred them for the "common benefit" of the property's owners. (See § 874.010, subd. (a) ["The costs of partition include: [¶] (a) Reasonable attorney's fees incurred or paid by a party for the common benefit"].) Whether attorney fees were incurred for the common benefit "must be decided upon the facts and circumstances in each particular case." (*Stewart v. Abernathy* (1944) 62 Cal.App.2d 429, 433.) Cummings supports her request simply by pointing to the trial court's decision to award her fees, and by citing to a single case, *Stutz v. Davis* (1981) 122 Cal.App.3d 1. In *Stutz*, however, the partition resulted in a substantial payout to the parties ($280,000 to one party and $560,000 to the other). (*Id*. at p. 5.) Here, Cummings does not even attempt to explain how her partition action before the trial court created a

---

[14]   Although Dessel and Seal initially were represented by counsel on this appeal, their counsel withdrew after filing an opening brief. Dessel and Seal then filed a reply brief acting pro se. The reply brief raised a number of new issues for the first time. Waiting until the reply brief to make an argument, however, forfeits the argument. (*People v. Bonilla* (2007) 41 Cal.4th 313, 349-350.) Accordingly, we deem these arguments forfeited and decline to address them. (*People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26 [" 'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before' "].) We also deny the motion Dessel and Seal filed on November 30, 2015, to augment the record with improved copies of an exhibit referenced in their reply brief, because the exhibit is not relevant to any issue we discuss in this decision.

common benefit, or how her defense of the judgment on appeal did so.  Nor does she cite to any findings by the trial court that would support a conclusion the partition action conferred a common benefit.  No substantive argument having been proffered, we do not consider the issue.  (See, e.g., *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [When an appellant fails to support a point " ' "with reasoned argument and citations to authority, we treat the point as waived" ' ";  " 'We are not bound to develop appellants' argument for them' "].)

### III.    DISPOSITION

The judgment is affirmed.  In the interests of justice, each party to bear their own costs on appeal.

 

                                   _____

                                   Rivera, J.

We concur:

_____

Reardon, Acting P.J.

_____

Streeter, J.

*Cummings v. Dessel et al.* (A144212)

21

Gayle S. Cummings v. Jennifer Dessel et al. (A144212)

| | |
|---|---|
| Trial Court: | Humboldt County |
| Trial Judge: | Honorable W. Bruce Watson |
| Counsel for Defendants and Appellants Jennifer Dessel and Emily Seal | Jennifer Dessel, in pro. per.; and Emily Seal, in pro. per. |
| Counsel for Plaintiff and Respondent Gayle S. Cummings | Floyd Law Firm, Bradford C. Floyd and Carlton D. Floyd. |